## Richmond.

### THOMPSON V. CLARK.

#### FEBRUARY 11th, 1886.

1. CHANCERY PRACTICE—*Bills—Exhibits.*—Exhibits filed with and prayed to be read as part of bill are as much part thereof as if actually incorporated therein. *Johnson* v. *Anderson*, 76 Va. 766.

2. IDEM—*Bills of discovery—Answers.*—Where, upon pure bill of discovery, court retains and decides the·cause, plaintiff cannot contradict the answers by other evidence, because plaintiff would thereby prove himself out of court.

3. IDEM—*Bills of discovery and relief—Answers.*—Answer to bill for discovery and relief is to be treated as evidence, including its affirmative statement of fact, which are pertinent to the discovery sought, and is conclusive, unless overcome by the testimony of two witnesses, or of one witness with corroborating circumstances, or by corroborating circumstances alone, or by documentary evidence alone. *Bell* v. *Moon*, 79 Va. 341; *Corbin* v. *Mills*, 19 Gratt. 466.

4. IDEM—*Idem— Written evidence—Parol.*—The general rule that written evidence of indebtedness cannot be contradicted or altered by evidence of verbal arrangements, here finds an exception. Here the bill calls on defendant for a discovery as to the transactions between the parties, and the answer must be treated not only as evidence, but as evidence introduced by the plaintiff.

5. CASE AT BAR.—The evidence fully evinces that the bond, concerning which the suit was instituted by the administrator, was not the property of his intestate.

Appeal from decree of circuit court of Pittsylvania county, rendered December, 1882, in a suit in chancery wherein W. J. Overby, sheriff, administrator with the will annexed of Tabitha M. Thompson, deceased, was plaintiff, and A. J. Clark and

others were defendants. The bill was brought into equity on the sole ground of discovery and relief (in that forum) concerning a certain bond which the administrator had heard belonged to his testatrix. The decision was adverse to the complainant, and he obtained an appeal to this court.

Opinion states the case.

*W. W. Henry*, for the appellant.

*Carrington & Fitzhugh, W. W. Gordon* and *E. E. Bouldin*, for the appellees.

LEWIS, P., delivered the opinion of the court.

The bill alleges that soon after the plaintiff's appointment as administrator, with the will annexed of Tabitha M. Thompson, deceased, he was informed that the defendant, Clark, was indebted to his testatrix in the sum of $4,000, evidenced by bond; that said bond was in existence at time of the testatrix's death, but that the plaintiff, after diligent search, has been unable to find it; that he has been unable to ascertain the date of the bond or the time at which it became due and payable, and that the same has been destroyed or mislaid. And the prayer of the bill is that Clark be required to answer the allegations of the bill on oath, and to disclose the date of the said bond, to whom interest thereon was paid before the death of the testatrix, the amount and date of such payments, and that he be required to produce the vouchers for such payments and file the same with his answer, and for general relief. Accompanying the bill is an affidavit of the loss of the bond, which is in accordance with the established rule in such cases 1 Barton's Chy. Pr. 322; *Thornton* v. *Stewart*, 7 Leigh, 128.

It appears that the testatrix died on the 14th of November

1880, and that on the 23d of the same month Clark, the defendant in the present suit, entered into a written contract, under seal, with one William Fontaine, a brother of the testatrix, wherein it was recited that several years prior thereto the said Fontaine had sold and conveyed certain lands to one Elisha Keen, Jr., reserving no lien for the purchase money; that subsequently the same lands were sold by Keen to Clark, and that Keen becoming insolvent and unable to pay his purchase money notes to Fontaine, it was agreed between Clark and Fontaine that if Clark would procure an assignment by Keen to Fontaine of so much of his (Clark's) indebtedness to Keen as would satisfy the unsecured balance of purchase money by Keen to Fontaine, he (Fontaine) would never collect the principal of Clark's indebtedness, but would be content to receive the interest only during his life; that sometime thereafter the desired arrangement was effected—a note for $3,000, with accrued interest, due by Clark to Keen, being assigned to Fontaine; whereupon Clark executed his bond to Fontaine for $4,000; that sometime thereafter Clark, at Fontaine's instance, executed a new bond, in the place of his bond to Fontaine, for the same amount, payable to Mrs. T. M. Thompson, with the understanding that this arrangement should in no wise interfere with their said agreement, and that only interest on the said bond should be collected as long as Fontaine lived. And it was further recited that Clark had paid all the interest which had accrued according to the agreement of the parties, and was willing to continue to pay interest on the debt so long as Fontaine should live, and that Fontaine being willing to give the fullest indemnity to Clark to protect him from the collection of any and all of the principal of the bond; "therefore," the instrument proceeds:    *    *   "The said Fontaine doth give and assign unto the said Clark all the interest, title, &c., which he, the said Fontaine, now has or may hereafter acquire in and

to said bond of $4,000, given by the said Clark to the said Thompson as aforesaid, except the right to collect the interest on said bond during the lifetime of the said Fontaine as aforesaid; and the said Fontaine doth covenant and agree with the said Clark that he will forever defend and save harmless the said Clark from the payment of all the principal of the said bond," &c. A copy of this paper, marked "A Y," was exhibited with and prayed to be taken as a part of the bill, and is, therefore, as much a part of the bill as if actually incorporated therein. *Johnson* v. *Anderson*, 76 Va. 766.

Clark answered the bill, setting forth in detail the transactions between the parties, and substantially, as set forth in the paper "A Y," except that he denies that he executed *a bond* payable to Mrs. Thompson, but says that his indebtedness, such as it was, was evidenced by *a note*, which he thinks was drawn payable to Mrs. Thompson, and .due by its terms more than five years before the suit was brought, and therefore barred by the statute of limitations. Referring to Fontaine's request that the note be made payable to Mrs. Thompson, he says: "Respondent said that he did not see why said Fontaine desired said note executed to said Thompson, or to any one other than said Fontaine; that he did not owe said Thompson one cent, and never had any business transactions with her in his life. Said Fontaine then told respondent that it made no difference with him (Clark) to whom it was payable; that the note was his (Fontaine's), and that he only wanted and intended to collect the interest upon it as long as said Fontaine and Thompson should live, and when he died he (Clark) should have a full discharge from the principal of $4,000. Said Fontaine further assured respondent that said note should never pass beyond his (Fontaine's) control, and that he should never suffer by executing said note to said Thompson. Said Fontaine also said that he only wanted to collect the interest as long as he

lived, to provide a support for himself and his said aged and infirm sister—said T. M. Thompson—whom he had cared for and supported at his (Fontaine's) home for many years."

And then the answer avers as follows: "Respondent paid the interest to said Fontaine after the note was made payable to said Thompson, and never paid one dollar to said Thompson. The latter never told respondent during her life that she owned and claimed that said note belonged to her; nor did respondent ever learn from anyone else that it did; on the contrary respondent was always told that it belonged to said Fontaine.

"Respondent has been informed and believes, and, therefore, charges that said Thompson never owned the said note; that she never paid value therefor, and had no interest therein; that it was simply made payable to her at the instance of said Fontaine, for his own reasons, which he refused to state to your respondent."

The answer then further avers, that respondent continued to pay interest on the said note for $4,000, executed to said Thompson as aforesaid—not to her, but to said Fontaine, who regularly gave him his receipt therefor—until the 10th of May, 1881, when he remarked to respondent that his sister was now dead, and that he would not need any longer even the interest on the note, and that nothing more would ever be collected; that he (respondent), had fulfilled his agreement, and that he (Fontaine) would fulfill his, and surrender all claim to the note, which he did.

These unequivocal and consistent averments of the answer are to be taken as true, because responsive to the bill which calls for a discovery.

Indeed, the appellee contends that the answer is conclusive, and if the alleged necessity for a discovery were the only ground of equity jurisdiction in the case, this position would

be well taken.    For we apprehend that, if in such a case the plaintiff were permitted to contradict the answer and to prove his case by other evidence, he would thereby "prove himself out of court."    In this respect, the rule, as to the force and effect of an answer where the court of equity, to prevent circuity expense and delay, retains and decides the cause, is different from that which prevails where the discovery is sought to be used in an action at law.    In the latter case, said Judge Baldwin, speaking for the court in *Lyons* v. *Miller*, 6 Gratt. 427, "so much of the answer as makes in favor of the defendant may (at the trial) be disproved by its context, or by extrinsic evidence, and, on the other hand, may be sustained by corroborating testimony;" and this, he added, "is equally true of the substituted trial in equity."

But in the case of *Fant* v. *Miller & Mayhew*, 17 Gratt. 187, in which the question was discussed by Judge Moncure, who delivered the opinion of the court, the rule was declared to be as we have just stated it.    He said: "Where the court of equity retains the cause and proceeds to give the proper relief, it acts as a substitute for the court of law, and gives the same effect to the answer that would be given to it in that court.    It would seem, however, *with this difference*, that in the court of equity the only ground of jurisdiction being the necessity for a discovery, the plaintiff cannot contradict the answer by other evidence, as he would thereby prove himself out of court."

In other words, where a cause is retained which is brought into equity on the sole ground of discovery, and of which jurisdiction is acquired on that ground alone, the plaintiff must be content to have it disposed of in accordance with the established practice of the equity forum; that is to say, in accordance with the rule which does not permit the answer in such a case to be overturned by extrinsic evidence, since to falsify the allegation of a necessity for a discovery would defeat

the jurisdiction of the court whose aid the plaintiff has invoked. 2 Tucker's Comm. 503.

Such, however, is not the present case. The bill alleges that a bond was executed, which has been lost, and hence the jurisdiction is not dependent upon the necessity for a discovery. For courts of equity have always entertained jurisdiction to decree payment of a lost bond; and, although courts of law have, in modern times, dispensed with profert of a lost bond, yet the original jurisdiction of equity remains unimpaired. And the bill, says Judge Story, may be for discovery and relief, "since the jurisdiction attached when there was no remedy at law for want of a due profert." 1 Story's Eq., section 84; *Shields* v. *The Commonwealth*, 4 Rand. 541.

But, if we apply the ordinary rule as to the effect of an answer to a bill for discovery and relief—that is, a bill of which equity has jurisdiction independent of the prayer for a discovery, the result is the same as that for which the appellee contends. For by that rule the answer is treated as evidence, including its affirmative statements of fact which are pertinent to the discovery sought by the bill, and is conclusive, unless overcome by the testimony of two opposing witnesses, or of one witness corroborated by other circumstances, or by corroborating circumstances or documentary evidence alone. *Shurtz* v. *Johnson*, 28 Gratt. 657; *Jones* v. *Abraham*, 75 Va. 466; *Bell and Wife* v. *Moon*, 79 Id. 341; *Moore* v. *Ullman* 80 Va. 307. And here there is not sufficient evidence to produce that result.

It is true the answer is in conflict with the recital in the deed of November 23, 1880, that the indebtedness of the defendant was evidenced by bond; but this is explained by the averment in the answer that respondent "is now satisfied, upon further reflection and examination of the previous notes and papers, it was simply a promissory note, and not a sealed

instrument, and that in his haste in having said deed written it was called a bond, and should have been called a promissory note." The mistake was certainly not an unnatural one, and was precisely such a one as the evidence shows was several times made in writing assignments and receipts, which are filed with the record. Thus, Clark's *notes* to Keen were assigned as *bonds*, and in Fontaine's written receipt of payment of the assigned note, dated July 29, 1867, it was again described as *a bond*, though the note was before him when the receipt was given.

We do not, however, deem it necessary to follow the arguments of counsel upon the point as to whether the indebtedness of the defendant was evidenced by bond or note; for it is clear, we think, that whatever may have been the nature of the instrument which was executed—whether a bond or a note— it was the property, not of Mrs. Thompson, but of her brother, William Fontaine, as averred in the answer.

There is nothing in the record to show that she ever knew that any such paper had been executed, or that the defendant (Clark) was indebted to any one. It is certain that no such paper was to be found among her papers after her death, and the evidence shows that she was dependent upon her brother, and probably with very little means of her own. True, it appears that at one time she was assessed with a bond for $4,000; but in view of the evidence it is much more probable that this was a bond executed to her by A. J. Ford for $4,070.10, and given in to the assessor at $4,000, than that it was an obligation of the defendant (Clark). For if the bond assessed was not the Ford bond, it is quite certain that the last mentioned bond was not assessed at all, and in the absence of satisfactory evidence it is not fair to presume that the bond was deliberately withheld from taxation by Mrs. Thompson when called upon for a list of her taxable property.

We cannot presume that she thus intended to defraud the State. It is much more reasonable to presume the contrary, and, therefore, that the bond listed for taxation was the Ford bond.

It is not shown that the defendant (Clark) ever had a business transaction with Mrs. Thompson at any time, nor is there any evidence in the record to disprove the recitals of fact in the deed of the 23d of November, 1880, a copy of which is brought into the case by the plaintiff himself as an exhibit with the bill, except as to the nature of the paper by which the indebtedness of the defendant was evidenced. The far more material statement that his indebtedness was to Fontaine, and not to Mrs. Thompson, is not only not disproved, but is supported by the answer of the defendant and the depositions of witnesses.

It is contended, however, though the point was not made in the court below, that the written evidence of that indebtedness cannot be contradicted or altered by evidence of any verbal contemporaneous agreement between the parties. And such undoubtedly is the general rule. But it must be remembered that the bill calls on the defendant for a discovery as to the transactions between the parties, and that the answer must therefore be treated, not only as evidence, but as evidence introduced by the plaintiff. Moreover, as we have already said, it does not appear that Mrs. Thompson ever knew of the execution of the paper by Clark, or that the latter was in any way indebted to her before the execution of that paper, nor is it shown that the paper was ever delivered to her; and if not delivered, then it had no vitality as a note or an obligation of the defendant to her. It is agreed that the delivery to Fontaine was a delivery to him as her agent, and, therefore, in effect, a delivery to her. But of this there is no evidence, or at least none that is satisfactory. On the contrary, it appears

that Fontaine agreed with Clark to hold the paper as his property, and not to lose control over it. Our conclusion, therefore, is that the debt continued to be the property of Fontaine until after the death of Mrs. Thompson, when it was released to Clark by Fontaine.

It is alleged in the bill that since the execution of the deed of the 23d of November, 1880, Fontaine has departed this life, and that for sometime previous to his death, owing to the infirmities of old age, he was mentally incompetent to transact business. It is not, however, charged that he was not competent to contract at the time the deed was executed, and the evidence shows affirmatively and conclusively that he was competent. It is not charged that he was in any way unduly influenced or imposed upon, or that the transactions between Clark and himself were tainted with fraud. The arrangement between them was certainly a beneficial one to Fontaine, since by the aid and coöperation of Clark he was enabled to secure the payment of interest for his life on a debt due by Keen which, at the time the arrangement was made, was utterly worthless.

Upon the whole, we are of opinion that there is no error in the decree, and that it must be affirmed.

DECREE AFFIRMED.