# Wytheville.

## WARD'S ADM'R v. CORNETT AND OTHERS.

### JULY 11, 1895.

#### Absent, Buchanan, J.

1. USURY—*Penalty—Above Legal Rate After Maturity.*—A bond payable more than two years after date, without interest till maturity, but with interest at eight *per cent per annum* after maturity, is not usurious on its face. The excess above the legal rate is regarded as a penalty, and not as usury. A deed of trust to secure such bond, given after its maturity, and extending the time of payment thereof, is not usurious, but furnishes security for the bond and only legal interest thereon until paid.

2. USURY—*Quasi Penal Offense—Proof to Establish.*—A debt to be usurious must be so in the beginning. It cannot be made so by subsequent events. Where the debtor, by punctual payment of the debt, may relieve himself of the illegal interest stipulated for, it is not usury. Usury is a *quasi* penal offense, and, to avail as a defense, must be established beyond a reasonable doubt.

3. USURY—*Bill to Discover—Effect of Answer.*—Where the debtor calls on the creditor to answer under oath and discover usury, the answer of the creditor under oath, when responsive to the bill, must be accepted as true, in the absence of other evidence sufficient to overcome such answer.

Appeal from a decree of the Circuit Court of Grayson county, pronounced April 14, 1894, in a suit in chancery wherein appellants and others were the complainants, and appellees and others were the defendants.

*Affirmed.*

The opinion states the case.

*Walker & Caldwell*, for the appellants.

*Robert Crockett*, for the appellees.

RIELY, J., delivered the opinion of the court.

The only question presented by the appeal is whether the bond executed by B. E. Ward to E. Mallisse Cornett on July 1, 1878, for $1,275, is usurious or not.

It reads as follows:

"July 1, 1878.
$1,275.

On or before the first day of October, 1880, I promise to pay E. Mallisse Cornett or order, one thousand two hundred and seventy-five dollars, lawful money, without plea or offset, for value received, rate of interest agreed to be eight *per cent. per annum* after first day of October, 1880, until paid, and I hereby waive the benefit of my homestead exemption as to the payment of this debt.

Witness my hand seal.           B. E. WARD. [Seal]."

On October 28, 1878, B. E. Ward conveyed two hundred acres of his land by deed of trust to secure the above bond. It was provided in the deed of trust that if he failed to pay the bond by the first of October, 1880, then the trustee, upon the direction of the obligee in the bond, should sell the land to pay the debt.

It was further secured by a second deed of trust, along with another bond for $975, to F. R. Cornett, bearing date May 15, 1880, and payable one day after date, on 300 acres of land, which included the 200 acres conveyed in the first deed. The second deed bore date October 25, 1880.

The trustee, after the death of B. E. Ward, was proceeding, at the request of the beneficiary, to sell the land to pay

said bonds, when the administrators of the decedent and his heirs at law filed a bill to enjoin the sale. In their bill they charged that the debts secured by the deeds of trust were usurious, and called upon F. R. Cornett and E. Mallisse Cornett to discover, under oath, the rate of interest called for in the bonds, and the rate of interest agreed to be paid by B. E. Ward, whether specified on the face of the bonds or agreed verbally to be paid for the moneys lent to him; in what manner the amount specified in each bond was made up; and whether any device, either directly or indirectly, was resorted to by which interest in excess of the legal rate was charged or agreed to be paid for the loan or forbearance of the money specified in the said bonds. They were also called upon to state what payments, if any, had been made on the bonds, or either of them.

There is nothing in the record or in the answers to the bill to indicate usury in the bond of $975, or in another bond for $1,000, secured by deed of trust on land of B. E. Ward, and referred to in the record, and they may be dismissed from further consideration.

'The answer of F. R. Cornett and E. Mallisse Cornett was specific and positive as to the bond for $1,275, and was based upon personal knowledge. They stated, in substance, that the consideration of the bond was $1,125, cash lent to B. E. Ward on July 1, 1878, of which amount the sum of $250 belonged to E. Mallisse Cornett, to whom the bond was made payable, and the residue to F. R. Cornett, to whom she assigned it for value on January 1, 1880.

They further answered that B. E. Ward thought at first that he could repay the loan promptly at the end of two years but, to suit his convenience and to enable him to sell his cattle in the fall of 1880, he asked that three months longer might be given him for that purpose, so that, with the proceeds of the sale of his cattle then to be made, he would more

surely be able to pay the money; that the interest on $1,125 at six *per cent. per annum* for two years and three months, to-wit: from July 1, 1878, to October 1, 1880, was then calculated, and found to be $151.87, which added to $1,125, made $1,276.87; but, to make the bond for even money, the sum of $1.87 was dropped and the bond drawn for $1,275; that the rate of interest agreed to be paid was *six per cent. per annum* only; and that, it being understood and agreed that the bond should be paid at maturity, it was further agreed, by way of penalty only, in order to secure its prompt payment at maturity, that after maturity it should bear *eight per cent.*

It was denied in the answers that any payments had been made, except $35.15, paid on a tax-ticket on November 29, 1883, and credited on December 13, 1883, on the bond for $975; and the sum of $100, paid December 5, 1889, and credited on the bond for $1,275.

The bond itself, the deeds of trust made to secure it, and which have been already referred to, and the answer of F. R. Cornett and E. Mallisse Cornett, constitute the entire evidence bearing on the controversy.

It was stated by the complainants in the bill, that they had no means of proving the alleged usury except by a discovery from the defendants, and by calling for the discovery they made it evidence upon the matter in issue. The answer wholly denies the usury. It was directly responsible to the special interrogatories of the bill, and the whole of it is to be taken as evidence for the defendants.

*Morrison's Ex'ors* v. *Grubb*, 23 Gratt. 342; *Fant* v. *Miller & Mayhew*, 17 Gratt. 187; *Corbin* v. *Mills*, 19 Gratt. 438, 466; *Shurtz et als.* v. *Johnson et als.*, 28 Gratt. 657; *Bell & wife* v. *Moon*, 79 Va. 341; *Thompson* v. *Clark*, 81 Va. 422; 4 Minor's Inst., Pt. 2, p. 1191; Story's Eq. J. sec. 1528; and 3 Greenleaf on Ev., sec. 289.

It was claimed by counsel for the appellants that the bond

on its face disclosed the usury; and they therefore argued that, upon the principle that parol evidence cannot be received to vary a written contract, no averment to contradict the bond could be received or considered; and furthermore, that all the statements of the answer in regard to the bond, after its production, constituted new and affirmative matter, and could not operate as evidence without being proved as any other fact.

Whether the rule of evidence thus invoked is applicable to a contract of this kind (Browne on Parol Ev., sec. 36; *Thompson* v. *Clark*, 81 Va. 422; *Campbell* v. *Shields*, 6 Leigh 517; 3 Parsons on Contracts, 110; *Beete* v. *Bidgood*, 7 Barn. & Cress. 453; 7 Wait's Actions and Defenses, 611, sec. 5; Wharton on Ev. sec. 1044; and Tyler on Usury, 108-109), need not be decided, for it is to be observed that the bond on its face does not bear interest for two years and three months from its date. It is only after it matures that any interest is provided for. The answer, then, in disclosing the facts of the transaction in its inception, and stating the consideration of the bond, and that only legal interest entered into it, in nowise contradicts the terms of the bond. And all the statements of the answer respecting the loan and execution of the bond being directly responsive to the interrogatories of the bill, they are to be treated as evidence in the cause. And, being so treated, under the rule of law, in the absence of other evidence to overcome the answer, which is the case here, the charge of usury is wholly refuted.

The deed of trust by which the bond was originally secured authorizes an immediate sale of the land, if the debt is not paid when it falls due. It is evidence that prompt payment of the debt at maturity was contemplated by the parties. This fact, taken in connection with the unusual and peculiar character of the bond in not stipulating for any interest until it fell due at a fixed period in the future of considerable duration, and in providing for a greater than legal rate of interest

after its maturity, shows that this illegal rate of interest was affixed as a penalty to secure the prompt payment of the debt, and is not usury.    And this bond has to be so construed and treated.    A debt, to be usurious, must be so in the beginning. It cannot be made so by subsequent events.    An usurious agreement is one to pay originally a greater rate of interest than the law allows.    If the obligor had paid the debt when the bond became due, he would not have incurred, even under the literal terms of the bond, any liability to pay the illegal interest stipulated for after its maturity.    Where the debtor, by a punctual payment of the debt, may thus relieve himself and avoid the payment of the illegal interest stipulated for, it is not usury.    2 Minor's Inst. (4th edit.), 438; *Pollard* v. *Baylors*, 6 Munf. 433; *Graves* v. *Graves*, 1 Wash. (Va.) 1; *Scott* v. *Lloyd*, 4 Peters, 205; *Lawrence* v. *Coles*, 13 Ill. 577- 79; *Gower* v. *Carter*, 66 Am. Dec. 71; Tyler on Usury, 96, 213, 214, 215, 217; and Parsons on Contracts, 117 and note "S."

It was further argued that in the deed of trust of October 25, 1880, which was made to secure the debt of $975, and also to secure further the debt of $1,275, an extension cf time from October 1, 1880, to December 1, 1886, was given, and the debt in question, including the *illegal* interest stipulated for after its maturity, provided for.    But the provisions of the deed do not sustain this view.    The eight *per cent.* interest provided for in the bond being a penalty, the bond, if not paid at maturity, would only bear legal interest until paid; and this, we have no doubt, is the purport of the deed of trust.

It was provided as to both debts that the grantor should "remain in quiet and peaceable possession of the land until the 1st day of December, 1886, after which time, if default be made in the payment of the debt of $975, with interest thereon as aforesaid, and also of the other debt herein further

secured, with interest from the 1st day of October, 1880, thereon,'' the trustee, if requested, should sell the land.

The proper interpretation of this language, as it does not specify any rate of interest, must be that both bonds are to bear only legal interest. In the last clause of the deed, where it is directed how the proceeds of sale, in the event of sale, shall be applied, the language is that after paying the debt of $975, ''with legal interest thereon, as aforesaid,'' the balance, if any, is to be applied to the payment of the ''principal and interest on the other debt, herein further secured as aforesaid.'' The insertion of the word ''legal'' with respect to the interest to be paid on the one debt, and its omission as to the interest to be paid on the other debt, was relied on in argument as proof of a discrimination in the rate of interest on the two debts, and of an intention to provide for eight *per cent.* interest on the debt for $1,275. We do not think that this is a legitimate construction of the language used. The insertion of the word ''legal'' in the one case, and its omission in the other, was not intended to make any distinction in the rate of interest to be paid, and does not have such effect. Only legal interest in the case of each debt was provided for. Where interest is stipulated for, and no particular rate is reserved, it must be construed to mean legal interest only. A court would not be justified in inserting in a writing by construction an illegal rate of interest, such as eight *per cent.* in this case, where no particular rate of interest was stipulated for, but only interest generally, where its effect would be to make a debt usurious, and thereby invalidate it. This could not be done except in a case of irresistible implication. Evidence such as the above falls far short of the degree of proof required to establish usury. Usury is a *quasi* penal offence, and must be strictly proved. The evidence must establish it beyond a reasonable doubt. *Brockenbrough's*

*Ex'ors* v. *Spindle's Adm'r*, 17 Gratt. 21; 7 Wait's Actions & Defences, 637; and Barton's Law Practice, 549.

The evidence relied on in this case to prove usury, exclusive of the answer, fails to do so; and, when the answer is consdered as evidence for the defendants, which we are bound to do, the charge of usury is completely refuted.

The decree of the Circuit Court must be affirmed.

AFFIRMED.