Statement.

## Wytheville.

COLDIRON & OTHERS v. ASHEVILLE SHOE COMPANY & OTHERS.

JULY 9, 1896.

Absent, Harrison, J.

1. EVIDENCE—*Statements of assignor in absence of assignee.*—Statements of the obligee of a title bond, made after assignment thereof, in the absence of the assignee and prejudicial to his interest, are not competent evidence against such assignee, and cannot effect his rights.

2. CHANCERY PLEADING—*Answer responsive to bill is evidence for the defendant.*—The answer of a defendant which is responsive to a bill which calls upon the defendant for an answer, and which is also responsive to special interrogatories propounded in the bill, is to be taken as true, unless overcome by the testimony of two witnesses, or one witness and corroborating circumstances, or by documentary evidence alone. The whole of such answer is to be taken as evidence for the defendant. It cannot be separated and a part accepted and the residue rejected.

3. JUDGMENTS—*Lien only on debtor's interest in land—Not a lien on an equitable estate held in trust for others.*—Where statutory enactments do not interfere, a creditor can never get by his judgment more than his debtor really owns, and to this he will be confined by a court of equity. In the case at bar the judgment debtor had no interest in the lands sought to be subjected to which the lien of a judgment against him could attach. His interest was a mere equitable title held in trust for others.

Appeal from a decree of the Circuit Court of Lee county pronounced November 14, 1895, in a suit in chancery wherein the Asheville Shoe Company, suing on behalf of itself and all other lien creditors of J. J. Kelly, Sr., was the complainant, and appellants were the defendants.

*Reversed.* ·

The opinion states the case.

*Bullit & Kelly, Mathews & Maynor,* and  *Orr & Blankenship,* for the appellants.

*Duncan & Hyatt, Pennington Bros., J. H. Fulton* and *A. L. Pridemore,* for the appellees.

RIELY, J., delivered the opinion of the court.

The liability of certain lands in Lee county for the payment of judgments recovered against J. J. Kelly, Sr., is the matter for determination in this case.  These lands were purchased with the proceeds of other lands in Wise county that had belonged to  Kelly.

In determining this matter, the main question for consideration is whether Kelly did in fact convey, in 1884, to his daugher, Rebecca Coldiron, and to his  son, James F. Kelly, his land in Wise county, which is  designated in the record as the "Moon–Kelly" tract; for upon the  decision of that question the case, in our view, mainly turns.

It appears that Kelly, Sr., owned  a number of tracts of land in Wise county, and, being attacked in 1884 with a dangerous malady, determined, instead of  making a will, to divide up and convey his  lands to his children.  Conveyances to this effect are in  the record, all of  which bear date on September 1, 1884, and  were acknowledged before the same notary public on March 4, 1885.   Among these conveyances are  the deeds to Rebecca Coldiron and James F. Kelly for the " Moon–Kelly" tract of land.   They bear the same date and were acknowledged before  the same notary public, and on the same day as  the other deeds.   Some of these  deeds were recorded in a short  time thereafter, while others were not recorded for several  years, and others still

were never recorded.   Among the last are the deeds to Rebecca Coldiron and James F. Kelly.   It is not questioned that they were executed and acknowledged as they purport to have been, but it is claimed by the appellees, who are the judgment creditors, that they were never delivered, and consequently that the land remained the property of the grantor.

The Asheville Shoe Company, having recovered, in 1891, a judgment against Kelly, Sr., filed its original and amended bills to enforce the lien thereof against the lands in Lee county, which, it averred, he had bought of James B. Richmond and John M. Johnson and fully paid for, but had not obtained the legal title.   The bill expressly charged that he was seized and possessed of these lands in his own right, and required him to answer the bill upon oath.

The complainant subsequently filed a supplemental bill in which it alleged that Kelly, Sr. " had sold but not conveyed " the land bought of Richmond to his son, James F. Kelly, and to W. S. Coldiron, the husband of his daughter, Rebecca, and the land bought of Johnson to his son, David Kelly, and to Sampson Bishop, the husband of his daughter, Jemima; and charged that the " said sales " were made without consideration deemed valuable in law.   It called upon W. S. Coldiron, Rebecca Coldiron, James F. Kelly, Sampson Bishop, Jemima Bishop and David Kelly, who were made defendants, and upon J. J. Kelly, Sr., to answer the bill upon oath; and to answer also upon oath a number of special interrogatories.   Among these were the following:

" Do you and each of you state what land or lands or interests in real estate J. J. Kelly, Sr., now owns or claims to own, and give a full description thereof; also what land or lands or interest in real estate derived by sale or gift or deeds from J. J. Kelly, Sr., you or your respective wives own or have or pretend or claim to have or own."

" If any such ownership or claim of ownership is discovered, do you and each of you state your respective knowledge, information and belief, fully and without shifts or reservation as to the value thereof, and as to the consideration given or to be given therefor, its real value and every other fact in relation thereto."

" Do you, or any of you, know or believe, or have you heard of anything not heretofore stated by you, which will throw any light on the matters mentioned in any part of this bill, or in the original, or in the amended bill, heretofore filed in this cause? If so, state fully what you know, have heard, or believe."

J. J. Kelly, Sr., filed a full and explicit answer to the original, amended, and supplemental bills. His co-respondents, W. S. Coldiron, Rebecca Coldiron, James F. Kelly, Sampson Bishop, Jemima Bishop, and David Kelly, filed brief answers, in which they referred to and adopted the answer of Kelly, Sr., as their answer, and averred that the statements therein contained were true.

Kelly, Sr., in his answer to the several bills and special interrogatories, after denying that he was seized or possessed of, or had any right to, or any beneficial interest in, any real estate whatsoever in Lee county, answered that the said lands were bought for Rebecca Coldiron and James F. Kelly with the proceeds of sale of the "Moon-Kelly" tract of land in Wise county, which he had conveyed to them in 1884, and had sold for them to E. B. Moon in 1888. He further answered that he had divided his lands in Wise county among his children, and conveyed the same to them as hereinbefore mentioned, and filed the deeds or all that are material to this controversy. He stated further that "the said deeds were *delivered* to the said children shortly after the dates of the acknowledgments thereof, and that ever since, the lands therein respectively conveyed have been considered and have been the lands of his said children respectively."

The only witness examined by the complainant to dis-
prove a delivery of the deeds was F. M. Clarkston, a son-in-
law of Kelly, Sr., and to whose wife one of the conveyances
was made. He testified that he did not know anything about
their delivery, and did not know that he ever heard of it.
His testimony, at best, is mere negative evidence, for he did
not say that the deeds were not delivered, but merely that
he did not know that he had ever heard of their delivery.
It is manifest that he misapprehended the purport of the
question, for the deed to his wife was recorded, and the land
conveyed by it to his wife was subsequently sold and con-
veyed by him and her to the Virginia Coal and Iron Com-
pany.

The conduct of the parties in dealing with the land was
much relied on to overthrow the answers. The record shows
that, although Kelly, Sr., had conveyed the " Moon-Kelly "
tract of land to Rebecca Coldiron and James F. Kelly in
1884, he conveyed it to Bullitt & McDowell, a prominent law
firm, by deed dated March 24, 1888; and that Moon, claim-
ing that Kelly had agreed to sell the land to him on March
23, 1887, brought suit to rescind the sale to Bullitt & Mc-
Dowell and annul their deed. This the court refused to do.
Negotiations subsequently ensued between Kelly, Bullitt &
McDowell, and Moon, with the result that Bullitt & Mc-
Dowell re-conveyed the land to Kelly, and he, on October
14, 1888, conveyed it to Moon for the price of $55,563.68,
for which amount two notes were given payable to Kelly,
one being for $10,838.33 and the other for $44,725.35, which
were secured on the land. It is stated in the answer that
the sale and conveyance of the land by Kelly in his own
name, instead of in the names of Rebecca Coldiron and
James F. Kelly, to whom he had conveyed it, was by their
direction, and is explained upon the ground that their deeds
had not been recorded and they thought that a better sale
could be made of the land as a whole than by a separate sale
of their respective parts of it.

The land being the property of Rebecca Coldiron and Jas.
F. Kelly, by virtue of the conveyances made of it to them by
their father in 1884, it followed that the proceeds of its sale
to Moon likewise belonged to them; and their father held
the notes by operation of law in trust for their benefit.

The answer in further response to the bill, states that
Kelly, Sr., after consultation with Jas. F. Kelly and Rebecca
Coldiron and her husband, purchased, in February, 1889,
from Richmond and Johnson the lands in Lee county,
which it is sought in this suit to subject to the payment
of the judgments against Kelly, for the benefit of his said
two children, and paid for the same with the notes given
by Moon for the land in Wise county—the entire note for
$10,838.33 being assigned for such purpose and so much
of the note for $44,725.33 as was sufficient to pay the
balance of the purchase money—and they took possession
of the lands so purchased. The title bonds, however, were
taken by Kelly in his own name, but never recorded. After-
wards, on June 2, 1890, he assigned and transferred, with
the consent of Rebecca Coldiron, the title bond for the land
bought of Richmond, to her husband, W. S. Coldiron, and
to James F. Kelly; and on June 30, 1890, he assigned and
transferred the title bond for the land bought of Johnson, to
Jemima Bishop and David Kelly. This last bond was so
assigned by direction of the parties interested in pursuance
of an exchange of lands that had taken place between a
part of them, and of an agreement between the children to
make a better provision for William Kelly, whose property,
an old mill, acquired in the division made by Kelly, Sr., of
his lands among his children in 1884, had turned out to be
practically valueless, while the "Moon-Kelly" land had
rapidly appreciated beyond all expectation, in consequence
of the speculation in mineral lands.

Evidence was introduced by the complainant to the effect
that Kelly, Sr., in 1893, or 1894, had represented to the Cir-

cuit Court of Lee county, when presented as surety on some
official bond, and also to Hamblen, to whom he became surety
on the bonds of his son-in-law, Clarkston, for the purchase
of a tract of land, that he was the owner of the lands in Lee
county, and was worth from $40,000 to $50,000, but it was
not shown that W. S. Coldiron, Rebecca Coldiron, James F.
Kelly, Jemima Bishop, or David Kelly, to whom the title
bonds to the said lands were assigned, or any of them, were
present when these statements were made, or ever heard of
them. This was certainly not competent evidence as against
them, and could not affect their rights. It was duly ex-
cepted to and cannot be considered.

It was also claimed that when, in 1892, the lands were
rented out by the court to pay Kane's judgment against
Kelly, Sr., Coldiron became the renter and raised no contro-
versy at that time as to Kelly's ownership of the land. The
testimony of D. C. Sewell, who was the commissioner, does
not sustain such contention, but, on the contrary, he states
that Coldiron, shortly before the renting, showed him what he
took to be a title bond from Richmond for the land, and that
on the back of it was an " endorsement of a transfer of the
same to W. S. Coldiron and to perhaps others;" and, accord-
ing to the impression of the commissioner, stated at some
time that he was renting his own land.

The answer of Kelly, Sr., which, by reference thereto and
adoption by the said claimants of the land, is made their
answer also, is responsive to the allegations of the several
bills of complainant, and to the comprehensive and search-
ing interrogatories hereinbefore recited, and the whole of it
is to be taken as evidence for the defendants. It cannot be
separated and a part regarded as evidence and the rest re-
jected. *Morrison's Ex'ors.* v. *Grubb*, 23 Gratt. 342; and *Ward*
v. *Cornett*, 91 Va. 676.

And, being responsive, the answer is to be taken as true,
unless it be overcome by the testimony of two witnesses, or

one witness and corroborating circumstances, or by documentary evidence alone. *Smith* v. *Smith*, 92 Va. 696; *Thompson* v. *Clark*, 81 Va. 422; and *Jones* v. *Abraham*, 75 Va. 466.

While the conduct of the parties in dealing with the lands both in Wise and Lee counties excites grave suspicion, yet it is not sufficient to overcome the effect which we are required, under the familiar and long established rule of courts of equity, to give to the answer as evidence. It is therefore to be taken as true; and, being true, it is to be considered as establishing that Kelly, Sr., in 1884, divided his lands in Wise county among his children, and conveyed the same to them respectively. It is to be considered as establishing that he made and delivered to Rebecca Coldiron and James F. Kelly deeds for the " Moon-Kelly" land; from which it follows that upon the sale thereof to Moon, the proceeds of the sale became their property; that he bought, after consultation with them and for their benefit, from Richmond and Johnson, the lands in Lee county with the proceeds of sale of the ",Moon-Kelly" land; and that although he took the title bonds in his own name, he acquired no beneficial interest in these lands, but merely held the equitable title in trust for the rightful parties. And the fact is to be emphasized that all this took place not only prior to the recovery of the judgments, to the payment whereof it is now sought to subject the lands in Lee county, but, so far as appears from the record, before the debts, on which the judgments were recovered, with the exception of one debt for a comparatively small amount, were even contracted. The conveyance of the " Moon-Kelly" land to Rebecca Coldiron and James F. Kelly was made on September 1, 1884. It was sold and conveyed to Moon on October 16, 1888. The lands in Lee county were bought from Richmond and Johnson in the spring of 1889, and were paid for out of the notes given by Moon; and the assignment of the title bonds for these lands was made by Kelly, Sr., to the parties now claiming

the lands in June, 1890; while no one of the judgments was recovered prior to September, 1891, and, with a single exception, no one of the debts was contracted earlier than 1891.

So that neither when the judgments were recovered against J. J. Kelly, Sr., nor when the debts were contracted, did he have title to or own any interest whatever in the "Moon-Kelly" land; but the title thereto was in Moon, to whom it had been sold and conveyed for a full and valuable consideration, and the deed duly recorded. These judgments could not therefore possibly constitute liens upon it.

And it is to added that the division by Kelly, Sr., of his lands in Wise county among his children was made when he was free from debt, and no reason existed why he might not lawfully do so. It was made, too, at a time when he was sick with a dangerous disease, from which his recovery was uncertain, and when he could not have meditated the perpetration of a fraud upon creditors whose debts were not contracted until several years afterwards.

Inasmuch as the lands in Lee county were bought by Kelly, Sr., with the proceeds of the sale of the tract of land in Wise county, which he had previously given to Rebecca Coldiron and James F. Kelly when he had the right to do so, they were entitled to the entire beneficial interest in the said lands, and he had no interest therein upon which the judgments against him could operate, or which could be subjected to their payment, or of the debts upon which they were founded.

Judgments constitute liens only on such real estate of the debtor, of or to which he is possessed or entitled, at or after the date of the judgment. Code of Virginia, sec. 3567. Kelly was neither possessed of, nor entitled to the lands in Lee county, when the judgments sought to be enforced against them were recovered. He had neither the possession nor any beneficial interest in them. At no time did he hold anything beyond the mere equitable title, and this he held as the

agent of the parties who were rightfully entitled to the lands, or in trust for them; and no statute required, in such case, the recordation of the title bonds to prevent judgments against him from attaching as liens on the lands.

"Authorities without number might be cited to show," said Judge Burks in *Borst* v. *Nalle et als*, 28 Gratt. 433, " that where statutory enactments do not interfere, the creditor can never get by his judgment more than his debtor really owns, and to this he will be confined, as he should be, by courts of equity."

Equally pertinent and emphatic is the language used by Judge Staples in *Floyd, Trustee,* v. *Harding*, 28 Gratt. 407: " It has been over and over again decided that the judgment creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liabilty under which the debtor held it, and subject to all the equities which exist at the time in favor of third persons; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a purchaser. He has no equity whatsoever beyond what justly belongs to his debtor. His claim is to subject to his lien such estate as the former owns, and no more."

For the foregoing reasons we are of opinion that the Circuit Court erred in decreeing a sale of the lands in Lee county to pay the judgments against J. J. Kelly, Sr., and for this error its decree must be reversed.

*Reversed.*