STATE MUTUAL RODDED FIRE INSURANCE CO. OF
MICHIGAN *v.* RANDALL.

1. EVIDENCE—JUDICIAL NOTICE—CAUSE OF FAILURES OF MUTUAL
   FIRE INSURANCE COMPANIES.
   The court will take judicial notice that the failures of
   most, if not all, mutual fire insurance companies have
   been due to inability to collect the assessments made.[1]

2. INSURANCE — BENEFICIAL ASSOCIATIONS — ASSESSMENTS — AD-
   DITIONAL PER CENT. ENFORCEABLE AS STIPULATED DAMAGES IN
   CASES OF DEFAULT.
   A provision in the articles of association of a mutual fire
   insurance company, which also becomes a part of the
   contract of insurance, for the payment of an additional
   10 per cent. of the assessment per month for not to
   exceed 12 months by those members in default is not
   usurious, neither is it a penalty unenforceable at law,
   but may well be regarded as damages stipulated and
   agreed upon as compensation for their failure to live up
   to the terms of their agreement.[2]

3. SAME — MEMBERS LIABLE FOR ASSESSMENTS DURING SUSPEN-
   SION.
   The further provision in said articles of association,
   made a part of the contract of insurance, that "a member
   is liable for his ratable proportion of all liabilities of
   the company which may accrue during the time his policy
   is void or suspended, and until his policy is legally can-
   celed," is valid and enforceable, since he has the right to
   reinstate himself by making payment of his arrears.[3]
   BIRD, MOORE, and WIEST, JJ., dissenting in part.

Error to Ottawa; Cross (Orien S.), J.    Submitted
April 15, 1925.    (Docket No. 86.)    Decided October
1, 1925.

Assumpsit in justice's court by the State Mutual
Rodded Fire Insurance Company of Michigan against

[1]Evidence, 23 C. J. § 1838 (Anno); [2]Damages, 17 C. J. § 233
(Anno); Usury, 39 Cyc. p. 985; [3]Insurance, 32 C. J. § 198.

Wilber Randall and another for the amount of certain assessments.   There was judgment for plaintiff, and defendants appealed to the circuit court.   Judgment for plaintiff for less than amount claimed.   It brings error.   Reversed.

*Kinnane & Leibrand,* for appellant.

*Jewell, Raymond & Face,* for appellees.

BIRD, J. (*dissenting*).   Plaintiff brought suit to recover two annual assessments and interest on a fire policy which it issued and delivered to defendants on August 25, 1920.   The assessment for 1921 was $15.60.   If not paid when due, 10% a month was added for a period not to exceed one year.   The assessment for 1922 was $12, and interest thereon, as in the previous item.   The defendants conceded they were liable for the 1921 assessment and interest at the rate of 5% per annum.   They, however, say they are not liable for the 1922 assessment because their policy was suspended on March 1, 1922, and they further say that 10% per month was a penalty and not liquidated damages, and therefore cannot be collected.   The trial court held with defendants on both of these propositions, and judgment was rendered for plaintiff for $17.72, the amount tendered by defendants for the assessment of 1921, and interest thereon at 5% per annum.

The same questions are before us for solution:

(1) Was the 10% a penalty or liquidated damages?
(2) Was the policy assessable in that part of 1922 while under suspension?

1. Was a charge of 10% per month for failure to pay the assessment when due usury or a penalty? It is not usury because the excessive rate was not absolutely payable.   Where the payor can avoid the excessive rate by making payment of the demand when

due it is not usury.    While there is some authority to the contrary, the prevailing opinion is that whenever the debtor by the terms of a contract can avoid the payment of the larger by payment of a smaller sum at an earlier date the contract is not usurious, but conditional, and the larger sum becomes a mere penalty.

Ruling Case Law states the rule as follows

"Where a borrower has agreed to pay a rate of interest not forbidden by law, but has stipulated that in the event of his not making payment at the time specified, the obligation shall bear a higher rate of interest, either from default or from the date of its execution, or that some specific sum shall be paid in addition to the increased principal and interest contracted for, the increased rate is generally regarded as a penalty and not within the usury laws."    27 R. C. L. p. 232.

Cyc. makes a similar statement:

"The agreement by the borrower that in case of default in payment at the time of maturity, there should be paid an additional sum in excess of legal interest, as liquidated damages is a penalty and generally unenforceable; but it is not usurious since it is not absolutely payable.    But there is some authority holding such contracts usurious."    39 Cyc. p. 985.

The following cases are in accord with this statement of the rule:    *Lloyd* v. *Scott*, 4 Pet. (U. S.) 205; *Blake* v. *Yount*, 42 Wash. 101 (84 Pac. 625, 7 Ann. Cas. 487, 114 Am. St. Rep. 106); *Ward* v. *Cornett*, 91 Va. 676 (22 S. E. 494, 49 L. R. A. 550).

Valuable notes will be found in 55 Am. Dec. 396; 46 Am. St. Rep. 178; 81 Am. Dec. 737; 91 Am. St. Rep. 588.

Inasmuch as defendants in the present case could have relieved themselves from the excessive rate by making payment of the assessment when due, we must conclude that the excessive charge was not usury but was a penalty and therefore not recoverable.

2. Are defendants liable for the assessment during the period when the policy was suspended?

Subdivision (*f*) of article 10 of the charter provides:

"A member is liable for his ratable proportion of all liabilities of the company which may accrue during the time his policy is void or suspended, and until his policy is legally canceled."

This provision does not appear to be altogether unreasonable. During the period of suspension the insured has the right to reinstate himself by making payment of his arrears. This is not true if the policy is canceled as he is then obliged to make a new application and it is optional with the company whether it will again accept his risk. The validity of this charter provision perhaps might be challenged on account of the word "void" but we need not pass upon that question as there is no contention in the present case that the policy is void. The charter provision will control in so far as the policy was suspended on account of defendants' default in payment. In view of the plaintiff's excessive and illegal demand the suspension was unauthorized and no recovery could be had for an assessment during that period. For that part of the year in which the policy was in force no basis appears in the record for computing the amount due. Therefore plaintiff should not be permitted to recover in this suit for any part of the assessment of 1922. This being in accord with the conclusion of the trial court, the judgment should be affirmed. Defendants should recover costs in both courts.

MOORE and WIEST, JJ. concurred with BIRD, J.

SHARPE, J. The plaintiff company was organized under Act No. 262, Pub. Acts 1895 (2 Comp. Laws 1915, § 9586 *et seq.*), and reorganized under Act No.

256, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 9100 *et seq.*).    Section 2 of chapter 1 of part 2 of the act provides, in the ninth subdivision (§ 9100 [46]), that mutual companies must set forth in their articles of association "in what manner assessments, premiums or payments are to be required from the members." The articles must be executed in triplicate and on forms provided by the commissioner of insurance, and, before filing, must have indorsed thereon a certificate of the attorney general that they comply with the provisions of the act.

Subdivision (*e*) of article 10 of plaintiff's articles of association reads as follows:

"A member neglecting or refusing to pay a premium or assessment note when due, or an assessment on or before the last day of the month in which the assessment is levied, shall pay a stipulated damage of 10 per cent. of the amount of such premium or assessment note or assessment, and thereafter an additional stipulated damage of 10 per cent. on the first day of each month until paid, but not to exceed twelve months in all.    Provided a member pays his premium or assessment note, or assessment before suit for collection is started, the secretary shall collect a stipulated damage of only five per cent. per month instead of 10 per cent. per month.    The secretary may, with the approval of the president, give a longer time than is herein specified in which an assessment shall be paid or before a stipulated damage is added, if in their judgment the best interest of the company demands it."

In defendants' application for insurance they agreed "that this application, together with the policy of said company, its charter and by-laws, are a part of the contract of insurance," and the insurance was accepted "subject to the charter, by-laws, rules and regulations of said company."    It will thus be observed that the provision for the payment of the 10 per cent., if in default, was not a regulation of the

company, but an integral part of the contract of insurance.

The purpose of mutual companies, such as plaintiff, is to furnish insurance to its members at approximately the actual cost thereof. If considerable insurance be written, and all assessments be promptly paid, the expense of operation is trifling. Many such companies have been organized in this State. Several have failed. Some are prosperous. We may take judicial notice that the failures in most, if not all, cases have been due to the inability to collect the assessments made. The amounts are usually small, those here sued for being but $15.60 and $12. It is apparent that if suit must be brought to enforce collection, the company will receive but little, if any, benefit therefrom. This fact is well known to those who seek to organize such companies. It is for this reason that the provision for the payment of the 10 per cent. by those in default is inserted in the articles and becomes a part of the contract of insurance. Its purpose is not to secure interest on the delayed payment, but primarily to induce the members to make payment within the time limited therefor, and secondarily to cover in part the expense of collection.

I am unable to conclude that such an agreement, entered into by a person when he becomes a member, is not enforceable. I agree with Mr. Justice BIRD that the provision is not usurious. Neither do I think it a penalty unenforceable at law. I think it may well be regarded as damages, stipulated and agreed upon by the defendants as a compensation to their fellow members for their failure to live up to the terms of their agreement. The actual damages which the company will sustain, due to their default, cannot be estimated to a certainty. If but one member be in default, the damage would be trifling; if many be, the condition of the company could but

be serious. Its standing is dependent upon the prompt payment of its losses, and such payment is dependent upon the collection of its assessments. It has no assets to pledge as security for a loan. In case it borrows money to pay losses, its only way to make payment is by additional assessments, and, if these are not paid, a receivership under the statute must follow.

The contract entered into by the defendants was not one for the payment of a definite sum of money simply. It was an undertaking that if one or more of the members suffered a loss, they would contribute their ratable share of the sums necessary to reimburse them, and, in order to induce and secure prompt payment and to cover any expense due to the collection of arrears, they agreed with their fellow members that the percentage provided for should be collected as their additional share of the sums necessary to pay such losses and the expenses of operating the company. The percentage, when collected, goes into the treasury of the company. The entire membership receives the benefit, if there be any, incident to its payment.

The relationship of lender and borrower does not exist. While there is an obligation resting on the insured member to pay the assessments levied, this obligation is coupled with his agreement that, if not paid when due, he will pay the additional amount, plainly stated in the contract. The organizers of this company felt impelled to insert this provision in the articles to insure its stability. When the defendants and all others became members of the company, they agreed that it should become a part of the contract of insurance, binding alike with the other provisions therein. It operates on all alike. I can see no reason why it should not be enforced.

My attention has not been called to, nor have I been

able to find, any Michigan decision in which this question was considered.    The general rule undoubtedly is that interest on moneys in default is compensation for the delay in securing payment.    Damages in such cases, although agreed upon, will ordinarily be construed as penalties, and cannot be enforced.    See *Davidow* v. *Wadsworth Manfg. Co.*, 211 Mich. 90, 94 (12 A. L. R. 605), and cases cited.    An exception to this rule, where the relation of borrower and lender did not exist, was pointed out in *Flanders* v. *Chamberlain*, 24 Mich. 305.    A note, given on the sale of property, provided that it should draw no interest if paid at maturity, but, if not then paid, it should draw interest from date.    CHRISTIANCY, C. J., said:

"As this note shows upon its face, that it was to draw no interest before maturity, if then paid, it is claimed that this is in the nature of a penalty; and in an ordinary case, when a note is given for a precedent debt, I am strongly inclined to think such a provision for interest from date, at ten per cent., if not paid when due, ought to be treated as a penalty rather than stipulated damages, for nonpayment at the day.    But it is shown that this note was given for property sold on these specific terms, such being the condition of the sale; and undoubtedly a vendor has a right to refuse to sell except upon this or any other condition; and such being the condition of the sale in pursuance of which the note was given, I think it must draw interest from date at the rate mentioned."

This case is cited and quoted from with approval in *Wrenn* v. *Land Co.*, 65 Or. 432 (133 Pac. 627, 46 L. R. A. [N. S.] 897), wherein the authorities are reviewed at length, and the same conclusion reached. See, also, note in 12 A. L. R. 374; 33 C. J. p. 221, and note.

The effect of such agreements arising out of contract, where the relation of lender and borrower does not exist, is well illustrated in *Hardee* v. *Howard*, 33 Ga. 533 (83 Am. Dec. 176).    Defendant drew on

plaintiffs a draft for $2,370.85, payable at a bank, agreeing with the acceptors—

"that if they failed to send them in time cotton sufficient to satisfy the same at maturity, then, and in that case, they bind themselves, * * * to pay to the said acceptors ten per cent. on the principal and interest * * * as stated and liquidated damages therefor."

There was default in making shipment of the cotton, and it was held that the ten per cent. was collectible as stipulated damages.

In *United Shoe Machinery Co.* v. *Abbott,* 86 C. C. A. 118, 158 Fed. 762, it was held (quoting from the syllabus) :

"But an agreement in a contract for the sale or lease of property to give the debtor a discount in excess of legal interest in the event of his payment of the agreed price or rental before it is due is not obnoxious to public policy, is not a contract for a penalty, and is enforceable in the courts."

The right of a public service corporation to exact a charge for delay in payment has been passed upon by several courts.    In *State, ex rel. MacMahon,* v. *Telephone Co.,* 59 Wash. 156 (109 Pac. 366, 31 L. R. A. [N. S.] 329), the validity of a regulation of the company requiring payment of rentals in advance, and providing that—

"in case the monthly advance payment was not made, an additional charge of 50 cents each month would be paid by relator as compensation for the additional cost of collecting and handling the account,"

—was involved.    After alluding to the duty of the company to render efficient service, the court said:

"Manifestly, if all the subscribers of appellant continuously refused to pay their rentals in advance, and thus necessitated the employment of collectors, additional office force, and the incurring of other expenses incident to the collection of such rentals, the

moneys thus expended must be taken from the revenues of the company, and thus impair a fund to which the company must look for the expenditure necessary to keep its plant in the highly efficient condition required and demanded because of the public nature of the service. It is therefore not unreasonable that the company adopt a rule and enforce a regulation providing for the payment of its rentals in advance, and for an additional charge in case such requirement is not complied with. Such a charge is not an addition to the maximum rate provided for in the franchise. It is rather a charge for default and delinquency, which may be avoided by a compliance with the reasonable regulation for the payment of rentals in advance."

It was further said:

"There is some discussion in the briefs as to whether the 50-cent charge is in the nature of liquidated damages for the breach of contract to pay in advance, or whether it is a penalty. It is immaterial what its nature may be and we shall not attempt to critically analyze or define it. It was a proper regulation of the company, to assist in the prompt payment of the monthly rentals, and as such a proper and reasonable regulation it is sustained. It is not a fixed rate which must be paid to receive the service of the company, and which may not be increased from that fixed by the city in granting the franchise. It is rather in the nature of a regulation to insure the prompt payment of that fixed rate, beneficial alike to the company and its subscribers."

Cases from other States are reviewed in the note thereto. See, also, note to 43 L. R. A. (N. S.) 63.

A similar question to that here considered was passed upon in *People's Mut. Fire Ins. Co.* v. *Groff*, 154 Pa. St. 200 (26 Atl. 63). We quote from the syllabus:

"A stipulation in the application of defendant for his policy that, if any assessment be not paid within 30 days after notice of the same, he will 'pay 25 per cent. thereon for expense of collection,' is not uncon-

scionable and illegal, and may be collected, in addition to the assessment."

Some of the cases hold that there is a distinction between an agreement to pay a stated sum which might be satisfied by the payment of a smaller sum if paid at a specified time and an agreement to pay a specified sum with a proviso that if not paid by a specified time a larger sum would be due. The tendency of the later decisions has been to hold that there is no distinction in legal effect between the forms of such contracts. In *Longworth* v. *Askren,* 15 Ohio St. 370, it is said:

"Nor, in our view, does the order in which the sums are stated change their character, or the legal effect of the instrument; for, whether the amount to be paid is to be reduced upon compliance with the terms of payment, or to be increased on a default, is only a different mode of expressing the same thing."

I agree with Mr. Justice BIRD in holding that the provision in article 10 of the charter, quoted by him, is enforceable. I have expressed my views on this question at length in *Johnson* v. *Insurance Co., ante,* 204. In my opinion, defendants are liable for the assessment levied in 1922.

The judgment is reversed and set aside, with costs to appellant, and a new trial granted.

McDONALD, C. J., and CLARK, STEERE, and FELLOWS, JJ., concurred with SHARPE, J.