## J. E. Shropshire et ux. v. Commerce Farm Credit Company et al.

No. 4324.   Decided June 18, 1930.
Rehearing Decided May 16, 1931.
(30 S. W., 2d Series, 282.)
(39 S. W., 2d Series, 11.)

*Oxford & Oxford, M. J. Baird* and *Oxford & Johnson,* for appellant.

Any contract for interest that stipulates for a greater rate than ten per cent per annum is usurious and void as to the interest.

Any contract for interest where the interest is made payable annually which stipulates for a greater rate than ten per cent per annum for any year of the term is a usurious contract and void as to the entire interest contract.

Where a contract for the loan of money is for a term of years and the interest contracted to be paid by the borrower to the lender for any one year during said term, exceeds ten per cent per annum on the sum of money loaned, such interest for said year is under the statute of Texas, usurious and being tainted with usury it vitiates the written contract for interest.

A note providing that the interest is "payable annually" is a contract to pay interest each succeeding year, and is not a "term contract" merely announcing the rate to be paid.

A contract for interest evidenced by two sets of notes, one of each set maturing annually is a contract to pay interest annually.

A contract providing for the acceleration maturity, and the maturing of all interest notes for the full period of ten years, upon default in the payment of any annual installment of interest, and which provides for no cancellation of unearned interest, is usurious on its face, and void as to the interest.

Where a contract on its face is usurious, any amount of interest collected constitutes usury, and the payer is entitled to recover double the amount so collected as a penalty.

Constitution, art. 16, sec. 11, "All contracts for a greater rate of interest than ten per cent per annum shall be deemed usurious."

R. S., art. 4979, "The parties to any written contract may agree to and stipulate for, any rate of interest not exceeding ten per cent per annum on the amount of the contract."

R. S., art. 4980, "All written contracts whatsoever, which may in any way directly or indirectly violate the preceding article by stipulating for a greater rate of interest than ten per cent per annum, shall be void and of no effect for the amount or value of the interest only."

It will be observed that the constitutional provision above cited is a limitation on the amount of interest that shall be contracted for per annum. Had the framers of this constitution intended that the interest contracted for should not be a greater rate than ten per cent through the term, or life, of the contract they would have so stated, but to aid this

very contention they framed the Constitution so as to expressly limit the rate of interest that can be legally contracted for to ten per cent per annum, that is, ten per cent by the year, for the year, yearly.

And the Legislature in obedience to said constitutional provision passes R. S., art. 4979, which tracks the Constitution in the limitation to one year, said article as above quoted, authorized parties to contract in writing for any rate of interest not exceeding ten per cent per annum on the amount of the contract. It will be observed that the Legislature does not say during the life of said contract or that the parties may contract in writing for any rate of interest not exceeding ten per cent when figured on the entire contract, but they limit the rate of interest that can be charged for any one year by inserting the words per annum after naming the rate that can be charged. Ramsdell v. Bulett, 50 Kan., 440, 31 Pac., 1092; Mathes v. Interstate Loan Association, 50 S. W., 604.

Appellants submit that the contract for the loan of $4,200 to them by appellee, Commerce Farm Credit Company, when construed as a whole, that is, the original bond for said $4,200 with the ten coupons in the sum of $252 each attached, together with five notes for $252 each, payable one, two, three, four and five years from the date of the bond, and the two trust deeds given to secure the payment of said indebtedness, is a usurious contract and the papers as a whole on their face so show, and further that the said appellee, Commerce Farm Credit Company knew at the time it entered into the transaction that the same was a usurious contract and that said company entered into the same with the purpose and intention of collecting usurious interest. As an evidence of this fact, it was provided in the trust deed as follows:

That if the payment of the rate of interest provided for in said bond(s) and the taxes and assessments referred to in this clause, shall be construed by the court, finally having jurisdiction thereof, as requiring payment on said bonds of interest in excess of ten per cent per annum, the holder of such bonds shall pay such excess over the above ten per cent per annum; provided further, however, that if such court, having final jurisdiction, shall declare that such excess of ten per cent per annum is non-usurious, then, and in that event, both such ten per cent and any excess thereof, by reason of the taxes or assignments mentioned in this clause, shall be paid by the grantors herein.

Appellants submit that the insertion of the language above quoted in the deed of trust is an admission on the part of the appellee, Commerce Farm Credit Company, that it was contracting for interest in excess of ten per cent, or at least that it was willing to contract for interest that would likely be held by a court of competent jurisdiction to be usurious.

Said deed of trust further provides: "Now therefore, if default shall be made in the payment of principal or installment of interest upon said bonds or any of them when due, and any of said sum shall remain unpaid

—then at the option of the legal holder of said bonds, the same with interest and all other indebtedness and charges secured hereby, shall without notice become due and payable, and on the application of the said legal holder or holders or any of them, the said trustee is hereby empowered to take possession of said property and sell the same in said County of Hale at public auction." S. F., 7. "The proceeds of said sale shall be applied as follows—Second: To the payment of the indebtedness secured hereby." S. F., 8.

What indebtedness is secured thereby? The $4,200 bond, and the ten coupons of $252 each, and the same provision appears in the second deed of trust and the indebtedness secured thereby for five notes of $252 each. This provision in the respective deeds of trust which appear in the statement of facts authorize the holder of said bonds and notes or either of them on default of the payment of any interest coupon or interest note, to mature all of the interest coupons, being ten in number of $252 each and to mature all of the interest notes, being five in number of $252 each, and to sell the land for this unearned and usurious interest and make title thereto. That the contract on its face is usurious cannot be questione in the opinion of appellants, but of course, under the law, appellees might not have availed themselves of the provisions last quoted in the trust deed in an effort to enforce payment, and had the right to waive these provisions but they are referred to herein as evidencing the intention on the part of appellees to charge and receive usurious interest at the time the contract was entered into.

But appellees did charge and did receive usurious interest on the $4,200 from August 1, 1921, to August 1, 1922, and from August 1, 1922 to August 1, 1923, having charged and received $504 for each of said years which is twelve per cent interest on said $4,200, the original loan for each of said years. Shear Company v. Hall, 235 S. W., 195; Cain v. Bonner et al., 149 S. W., 704.

*Williams & Martin, Chas. L. Black, F. A. Williams* and *Terrell, Davis, McMillan & Hall,* for appellees.

A bill in equity cannot be maintained for the cancellation of usurious notes secured by deed of trust without tendering the return of the loan. Turner v. Bank, 28 So., 469; Long v. Green Co., 158 S. W., 305; Patterson v. Wyman, 170 N. W., 928; Liles v. Bank, 107 S. E., 490; Moncrief v. Palmer, 114 Atl., 181; Carden v. Short, 31 S. W., 246.

A contract susceptible of two constructions, one declaring it bad and one declaring it good, will, if possible, receive the latter construction. 27 R. C. L., p. 207; Tiffany v. Bank, 21 L. Ed., 862.

To constitute usury, there must be an intent to accomplish that purpose. 27 R. C. L., p. 208; Swanson v. Realization Co., 73 N. W., 167; Patterson v. Wyman, 170 N. W., 929; Norris v. Belden Co., 98 Texas, 182.

Where contract is made for the loan of money for ten years, with interest payable annually, it is a term contract, and so long as the parties thereto comply therewith it cannot be made effective for less than the term..

Where a contract for the loan of money is made for a term of years, and the rate of interest thereon for the term does not exceed ten per cent per annum, the loan is not usurious, regardless of the fact that for some years of the term the interest paid exceeds ten per cent for such years.

Where a loan is made for ten years, and the interest is in part evidenced by notes payable in a period less than the term of the loan, the balance of the interest being payable annually for the term of the loan, no usury results from a stipulation in the deed of trust authorizing the holder, on default in the payment of notes, to declare all due and foreclose the lien securing them, and more particularly is this true when no exercise of the option to mature has been made. Swanson v. Realization Co., 73 N. W., 165; Green v. Mortgage Co., 33 S. E., 869; Metz v. Winne, 79 Pac., 223; Eldred v. Hart, 113 S. W., 213; Cissna Loan Co. v. Gawley, 151 Pac., 792; Cissna Loan Co. v. Gawley, 1907 Anno. Cases D, p. 722; Garland v. Union Trust Co., 165 Pacific, 197; Clement v. Johnson, 201 Pac., 247; Green v. Loan Co., 240 S. W., 13; Investment Co. v. Lyons, 218 Pac., 183; Investment Co. v. Roberts, 218 Pac., 1037; Crider v. Assn., 37 S. W., 237; Dugan v. Lewis, 79 Texas, 246; Shear v. Hall, 235 S. W., 195; Federal Co. v. Bank, 254 S. W., 1005; Seymour Opera House v. Thurston, 45 S. W., 815.

Briefs, as amici curiae, were filed by the following: *Templeton, Brooks, Napier & Brown, Andrews, Streetman, Logue & Mobley, Samuels, Foster, Brown & McGee, Turney, Burgess, Culwell & Pollard, W. A. Tarver, Byron K. Elliott, Frank W. Wozencraft, R. G. Smith, Maco Stewart* and *Phillips & Phillips.*

Mr. Justice GREENWOOD delivered the opinion of the court.

As appears from the opinion of the Court of Civil Appeals, 266 S. W., 613, the pleadings and evidence disclosed the following facts:

"The plaintiffs (Shropshire and wife) borrowed the sum of $4,200 from one of the defendants, The Commerce Farm Credit Company, and executed their note (or bond) to the said company for the sum of $4,200, payable ten years after date. * * *" To secure payment of the interest, "the plaintiffs executed 10 interest coupons, each for the sum of $252, payable annually, which, it will be seen, represented interest on the loan at 6 per cent; the additional interest was 'squeezed into five equal payments,'" secured "by 5 separate notes, each for $252, payable one each year during the first five years of the loan period. * * * The principal note and the six per cent interest coupons were secured by a first lien deed of trust on land in Hale County."

By the terms of the $4,200 note and the coupons and the deed of trust securing same, it was stipulated that both the principal and interest of the note should bear interest "after maturity, whether matured from lapse of time or by default, at the rate of ten per cent per annum." Both note and deed of trust provided that if default was made in the payment of any installment of interest, when due, then at the option of the legal holders of the note, "the same with interest and all other indebtedness and charges secured hereby shall, without notice, become due and payable", and the deed of trust empowered the trustee to advertise and sell the land and make conveyance thereof to the purchaser.

The five separate notes for $252 each were secured by a second lien deed of trust on the land in Hale county, containing the following provision: "This conveyance is in trust, however, to secure the payment of grantor's promissory notes of even date herewith aggregating the sum of $1,260 and due as therein specified and provided, payable to the order of the Commerce Farm Credit Company. * * * If the notes secured hereby and each of them are not paid promptly, when due, or in case of the breach of any of the covenants, terms, or agreements in said first deed of trust, then all of said notes hereby secured shall become due and payable, at the election of the holder; and the trustee, his successor, or substitute may sell said premises, after notice as prescribed in first deed of trust, and execute and deliver a good and sufficient deed therefor and receive the proceeds of sale."

Shropshire and wife paid $1,015 in discharge of the two installments for $252 each first maturing on the note secured by the second lien deed of trust and in discharge of the first two coupons on the $4,200 note. Afterwards, Shropshire and wife instituted this suit to have the loan adjudged usurious and to recover double the amount paid by them as interest.

The district court rendered judgment that Shropshire and wife take nothing by their suit. The Court of Civil Appeals at Amarillo affirmed this judgment. 266 S. W., 612. On writ of error, the Supreme Court, on an opinion by Section A of the Commission of Appeals to the effect that the loan was usurious, reversed the judgments of the district court and Court of Civil Appeals, and awarded Shropshire and wife double the amount they had paid as interest on the loan. 280 S. W., 181. On motion for rehearing, the case was withdrawn from the Commission of Appeals and was argued before the Supreme Court.

From the above statement of the case it appears that the single question for our determination is whether a contract is usurious under the Constitution and statutes in Texas, which provides for the payment of a higher rate of interest than ten per cent per annum, at the creditor's option, on no other condition than the default of the debtor in discharging annual installments of interest. Regardless of results in the event the

debtor should discharge every promised annual installment of interest at or before maturity, it is too plain for dispute that this contract, on the face of the writings, entitles the creditor, at its option, on failure of the debtor to discharge certain annual installments of interest, to enforce collection from the debtor of a sum amounting to more than the $4,200 loaned with interest thereon for the term of the loan at the rate of ten per cent per annum. This results from the stipulations of the writings whereby such failure, at the creditor's election, shortens the term of the loan and increases the amount of the debtor's obligation.

The argument for defendants in error proceeds on the misleading hypothesis that the borrower had the right to retain the $4,200 for a term of *ten* years. Thus, it is argued: "In this case the borrower was entitled to use the money for ten years, and not merely for one year or five years, and the interest he agreed to pay was to be paid, not for the use of the money for one year or for each of the ten years considered separately, but for its use during the whole term of the loan". But, the contract, by means of the acceleration clauses, deprives the borrower of the right to retain the money beyond the date of default in discharging an annual installment of interest, if the creditor so elects. A borrower is no longer entitled to use money after he is obligated to no longer withhold it, and after his creditor can compel collection through sale of his mortgaged property.

The only way this contract can be upheld is by applying the doctrine invoked by defendants in error, announced by most text writers and supported by abundant authority, which Mr. Williston formulates as follows:

"The provision in a pecuniary obligation that on default of the debtor in payment of either principal or interest the entire indebtedness including interest for the full terms, or a greater sum than legal interest to the time of default, shall thereupon become immediately payable, is not usurious, though recovery of any excess over legal interest is generally disallowed as penal. Similarly, a provision that on default by the maker an obligation shall thereafter bear a rate of interest higher than the legal rate, though it may be objectionable as penal if the rate is excessive, is not usurious. The principle applicable to these cases has been thus stated: 'Wherever the debtor by the terms of the contract can avoid the payment of the larger by the payment of the smaller sum at an earlier date, the contract is not usurious but additional, and the larger sum becomes a mere penalty.'" 3 Williston on Contracts, sec. 1696; Webb on Usury, sec. 119, p. 134; Long v. Storie, 9 Hare, 546, 41 Eng. Ch., 545; Lloyd v. Scott, 4 Pet., 226, 7 L. Ed., 840; Ward v. Cornett, 91 Va., 681, 22 S. E., 494, 49 L. R. A., 550.

This doctrine, while quite generally followed, has not escaped criticism. Mr. Sutherland said of the theory that the contract should be

upheld because the debtor had it within his power to prevent the increase of his debt by promptly discharging his installment payments:

"This reasoning overlooks the possibility that for want of money the debtor will be unable to avail himself of this relief; this is the very inability, with its distressing consequences, from which it is deemed humane and politic by statutes against usury to shield him. * * * If the creditor's power over the necessities to extort oppressive terms at the lending is deserving of legal check, why limit that restriction to the period of credit? High rates of interest to commence at the end of that period are as likely to be oppressive as when applied before, and more likely to be assented to." 1 Sutherland on Damages (th Ed.), sec. 318, pp. 997-1000.

There is an expression in the opinion of the Court of Civil Appeals in the case of Seymour Opera House Company v. Thurston, 18 Texas Civ. App., 417, 45 S. W., 815-817, to the effect that an acceleration clause does not render a contract usurious though it would "result in requiring the maker to pay more for the use of the money than the rate fixed and limited by law would permit", for the reason that "the holder of the note ought not to be held responsible" for "the subsequent default of the maker." A writ of error was refused in that case.

The Supreme Court had previously stated in Dugan v. Lewis, 79 Texas, 249-254, 14 S. W., 1024-1026, 12 L. R. A., 93, 23 Am. St. Rep., 322, that the court agreed with the conclusion of the trial judge that a stipulation in a deed of trust to the effect that the whole sum of money thereby secured might be declared at once due and payable, at the lender's option, on failure to pay a note or its interest coupons, "is to be construed as a penalty which will not be enforced except upon canceling the unearned interest notes and that it does not make the contract usurious."

The argument is pressed upon the court with great earnestness that the decisions in these two cases have made the rule formulated by Mr. Williston a rule of property in Texas for such a length of time that it cannot now be properly departed from.

There is no possibility of usury in the contract involved in Dugan v. Lewis. While the deed of trust contained a clause that the whole sum of money secured by the lien of the deed of trust might be declared at once due, at the option of the lender, yet the note, which the deed of trust secured, specifically provided that the debtor's failure to pay the note or any installment of interest was to result in "making the *principal* of the note become due at the option of the holder". The court completely disposed of the case when it held: "We do not think a correct construction of the contract will make a greater amount of interest due and collectible upon it than shall have accrued on the principal calculated up to the date of collection at the rate named in the note; or in other words, that any unaccrued interest comes within the proper meaning of

the stipulation." 79 Texas, 254, 14 S. W., 1024-1026, 12 L. R. A., 93, 23 Am. St. Rep.; 322. Having correctly so construed the words of the writings before the court, it was wholly unnecessary for the court to declare what would have been the legal effect of writings containing words having a different signification. No greater weight should be given to the language relied on by defendants in error from the opinion in Dugan v. Lewis than should be given to any expression of opinion by the great judges then composing the court upon any question not necessary to be decided. It would subserve no useful purpose to discuss the effect which should be given to this court's refusal of a writ of error in the Seymour Opera House case for the reason that it is too plain for argument that no action by this court on mere application for writ of error can ever override a subsequent express decision of the same question in an opinion of the Supreme Court.

Within a year from the date of refusal by the Supreme Court of a writ of error in the Seymour Opera House case, Parks v. Lubbock, 50 S. W., 464, was determined by the Galveston Court of Civil Appeals, in an opinion by the eminent Justice Williams. The record now in this court shows that the case of Parks v. Lubbock was tried on a written agreement of counsel containing the following stipulation: "It is agreed in this case that the sum of $693.12 was the consideration and true amount of money advanced by the Jarvis-Conklin Mortgage Trust Co. to Henry Fields on November 1, 1889, and for which note of that date of $825 was given by Henry Fields and Mary Fields to said company and which is now sued on in this case". By the note, its makers promised to pay "eight hundred and twenty-five dollars, lawful money of the United States, with interest thereon at the rate of six per cent. per annum, payable semi-annually on the first days of May and November in each year, according to the tenor and effect of the interest notes of even date herewith and hereto attached. This note is to draw interest from date at the rate of twelve per cent per annum if either principal or interest remain unpaid ten days after due. At the option of the legal holder, after any of said interest notes remain due and unpaid ten days, the whole of the principal and interest may be declared immediately due and payable". The question squarely presented for decision in Parks v. Lubbock was whether the clause increasing the amount payable on conditions of default by the debtor to pay lawful interest installments rendered the above recited note usurious. The Galveston Court of Civil Appeals in decreeing the note free of usury declared:

"If 12 per cent interest for five years is calculated on the amount received by Fields, the sum of such amount and interest will exceed the sum of the principal of the note and the coupons. This proves that there is no absolute agreement to pay more than 12 per cent. which rate was allowable at the time this contract was made. The note, however, stipu-

lates for the payment of 12 per cent. upon the $825 in case of default in payment of principal or interest in accordance with the contract. This left it in the debtor's power to comply with his contract by paying less than the sum received and lawful interest upon it. The obligation to pay any additional amount could only arise from his default. Such stipulations are almost universally construed as imposing a penalty to enforce prompt payment only, and as not being usurious. Crider v. Association, 89 Texas, 597, 35 S. W., 1047; Dugan v. Lewis, 79 Texas, 254, 14 S. W., 1024, 12 L. R. A., 93, 23 Am. St. Rep., 322; 27 Am. & Eng. Enc. Law, p. 994, and cases cited." Parks v. Lubbock, 50 S. W., 466-467.

The Supreme Court granted a writ of error in Parks v. Lubbock and reversed the judgment of the Court of Civil Appeals and rendered judgment decreeing the note to be usurious. Explicitly recognizing that the authorities which were in line with the rule at common law "seem to be practically unanimous in upholding the legality of such a stipulation" as that contained in this note, the Supreme Court decided that the Texas statute had changed the common law rule. After quoting the statutory definition of interest as "the compensation allowed by law or fixed by the parties to a contract for the use of forbearance or detention of money", the court in the opinion of Chief Justice Gaines, who had participated in Dugan v. Lewis and Seymour Opera House Company v. Thurston, declared that "the detention of money arises in a case when a debt has become due and the debtor withholds its payment without a new contract giving him a right to do so. It follows, therefore, that what would have been deemed a penalty under the rule of the common law is made interest under our statute; and if the rate agreed upon for the detention of the money after the maturity of the debt exceed 10 per cent. per annum the contract is usurious and void as to interest. * * * The conclusion is not to be resisted that there was a purpose in adding the words *detention* to the accepted definition of interest, and that this purpose was to meet the case where the debtor should detain the money owed beyond the stipulated period of forbearance, and so to provide that a promise to pay an additional sum for such detention should be deemed interest, and not merely damages by way of penalty to secure a prompt performance of the contract." 92 Texas, 637, 638, 51 S. W., 322-333.

The principle controlling the decision of the question of usury in Parks v. Lubbock was again announced in Investment Company v. Grymes, 94 Texas, 613-615, 63 S. W., 860-861, 64 S. W., 778, where the court said: "The present question is this: Did the parties embrace in the 120 notes for the use of the principal debt a sum greater than the original debt would produce at 10 per cent per annum for the time the payor of the note had the use of the money?" Holding the 120 notes usurious, the court differentiated the Grymes case from the Crider case

in 89 Texas, 597, 35 S. W., 1047, as follows: "In the one now before the court the manner of payment imposes upon the payor *a charge for more time than he had the money.* By the contract in the other case, he paid only for the time it was used". So, the vice in the contract now under consideration is that the acceleration clauses impose on the debtors a charge, enforceable at the creditor's option, in excess of the maximum permitted in this state. Chief Justice Gaines dissented not on the correctness of this principle but with respect to the construction in the majority opinion of Grymes' contract as regards application of payments.

After stating the rule under most authorities that a rate beyond statutory limits to be paid on a loan only after maturity was to be regarded as a penalty, Mr. Sutherland adds in a footnote:

"A statute defining interest as 'the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money' changes the rule", citing Parks v. Lubbock, 92 Texas, 635, 57 S. W., 322. 1 Sutherland on Damages (4th Ed.) p. 999.

Likewise it is stated in 27 Ruling Case Law, sec. 33, p. 232:

"Where a borrower has agreed to pay a rate of interest not forbidden by law, but has stipulated that, in the event of his not making payment at the time specified, the obligation shall bear a higher rate of interest, either from default or from the date of its execution, or that some specific sum shall be paid in addition to the principal and interest contracted for, the increased rate is generally regarded as a penalty and not within the usury laws. * * * But under a statute defining interest as the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money, that which would have been deemed a penalty at common law is made interest, and a stipulation for interest after maturity at a rate in excess of the legal rate is usurious."

Mr. Page, after giving the general rule treating acceleration clauses like those before us as having no other effect than to provide penalties for non-payment, adds:

"Under some statutes a contract for a rate of interest after maturity, exceeding the legal rate, is usury. This result is reached in Texas under the statutory definition of interest as a sum allowed for the detention of money. In some states which under former statutes allowed interest after maturity in excess of the legal rate, statutes have since been passed specifically forbidding such contracts and making them usurious." Page on Contracts, section 465.

A clear statement of the law which governs our decision is made in 27 Ruling Case Law, at section 24, on pages 223 and 224, in these words:

"To constitute usury, it is of course essential that an excess of the legal maximum be exacted in consideration of the loan or forbearance. By this is meant an excess of the maximum prescribed by statute. Though there is authority to the contrary, it does not seem requisite that an excess

be payable in any event. On the contrary a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, *by the terms of the transaction,* and the means used to effect the loan, he may, *by its enforcement* be enabled to get more than the legal rate."

The Supreme Court of Florida vigorously assaield the soundness of the prevailing American rule, and held a stipulation usurious because it provided a greater rate than permitted by statute for "forbearance to enforce the collection of any debt", *after* the debt's maturity. Maxwell v. Jacksonville Loan and Improvement Company, 45 Fla., 425, 468, 34 So., 267, 268.

In Richardson v. Brown, 9 Baxt. 255, 267, 268, 68 Tenn., 249, the Supreme Court of Tennessee asked and answered questions as follows:

"What difference can it make in the essence of the transaction that the excessive rate shall be agreed to be paid for one period rather than another? Is it not equally the compensation demanded by the lender or the creditor for the use of his money? We think it is, most certainly. The fact that the party might relieve himself from this payment by payment of the bill at the day agreed upon for its falling due, only prevents other contracts from being enforced against him; but if he for any cause failed to pay, then the interest at the rate contracted becomes due by virtue of the agreement, is paid as interest for the continued use of the money, and is contrary to the requirements of the law."

The Supreme Court of North Carolina refuted the contention that a contract cannot be pronounced usurious until excessive interest had been collected, when it said:

"But the question of usury does not depend upon the question whether the lender actually gets more than the legal rate of interest or not. If this were so it could never be determined whether there was usury or not until the money was paid back. This would be locking the stable after the horse was stolen. But it depends upon whether there was a purpose in the mind of the lender to make more than legal interest for the use of money, and whether, by the terms of the transaction and the means used to effect the loan he *may* by its enforcement be enabled to get more than the legal rate. If so, the transaction is usurious." Miller v. Life Insurance Co., 118 N. C., 618, 623, 24 S. E., 484-487, 54 Am. St. Rep., 741.

Within about three years after the doctrine suggested in Dugan v. Lewis and Seymour Opera House v. Thurston had been definitely rejected

by the Supreme Court in its decision in the case of Parks v. Lubbock, the statutory definition of interest was re-enacted in article 3097 of the Revised Statutes of 1895. This definition was continued in the Revised Statutes of 1911 and of 1925, in articles 4973 and 5069 respectively. The Legislature must have intended the statute to have the effect previously declared by the Supreme Court in leaving its wording unchanged. So, the rule we follow, instead of disturbing a fixed rule of property, follows the law established in Texas for over thirty years and three times declared as the public policy of the state with respect to usury in revisions of the statutes. Pearson v. West, 97 Texas, 239, 77 S. W., 944; Cargill v. Kountze, 86 Texas, 400, 22 S. W., 1015, 25 S. W., 13, 24 L. R. A., 183.

In view of the contrary holding of the Commission, we deem it proper to say that though logically it is usury to deduct in advance the highest legal rate of interest on the principal of a loan for any part of the term for which the principal is borrowed, or to collect interest on the entire principal at the highest rate monthly or quarterly or semi-annually, or at other intervals less than a year, in advance of the year's expiration, yet these practices have been validated by the decisions in Texas, as elsewhere in the United States, too long for this court to now adjudge them to be usurious. Miner v. Paris Exchange Bank, 53 Texas, 560; Martin v. Land Mortgage Bank, 5 Texas Civ. App., 167, 23 S. W., 1035; Webb v. Pahde (Texas Civ. App.), 43 S. W., 19; Geisberg v. Mutual Building and Loan Assn. (Texas Civ. App.), 60 S. W., 478, par. 4 of syllabus, wherein writ of error was refused February 14, 1901, Complete Writs of Error Table, page 27; Investment Company v. Grymes, 94 Texas, 615, 65 S. W., 860, 64 S. W., 778; Vela v. Shacklett (Texas Com. App.), 12 S. W. (2d) 1007, 1008; Tyler on Usury, Pawns & Loans, pp. 155, 156; 27 R. C. L., sec. 326, pp. 225, 227; Page on Contracts, sec. 471.

This opinion will supersede that heretofore delivered by the Commission. Having vacated the judgment heretofore entered on the Commission's recommendation, the motion for rehearing is overruled and judgment will be entered reversing the judgments of the district court and Court of Civil Appeals and adjudging that plaintiffs in error recover of defendant in error, Commerce Farm Credit Company, the sum of $2,030.60 with interest from this date at the rate of six per cent per annum.

ON MOTION FOR REHEARING.

Near the end of the last term it was adjudged by the Supreme Court that a contract was usurious under the Constitution and statutes of Texas which provided for compensation in excess of ten per cent per annum, collectible at the creditor's option, for the detention of money. Shropshire v. Commerce Farm Credit Co., 120 Texas, 400, 30 S. W. (2d) 282; Deming Investment Co. v. Giddens, 120 Texas, 9, 30 S. W. (2d) 287.

The correctness of the court's judgment has been vigorously assailed in motions for rehearing supported by elaborate arguments by numerous amici curiae as well as by counsel for the losing parties. Most careful re-consideration convinces the court that the motions for rehearing should in all respects be overruled.

The two cases cannot be distinguished in so far as material facts are concerned and we shall therefore write again only in the Shropshire case.

The principal grounds on which a rehearing is sought are:

First: The language of the writing evidencing the contract between the parties being fairly susceptible of a construction under which the contract can be upheld as valid, it is the duty of the court to give that construction to the contract, and a failure to do so departs from the sound rule of construction which was followed in Dugan v. Lewis, 79 Texas 246, 14 S. W., 1024, 12 L. R. A., 93.

Second: Even though the language of the writings forbade any other interpretation than that same undertook to give the creditor the option to compel the debtor to pay the principal of the loan together with an amount in excess of ten per cent per annum for the term the debtor was entitled to the money, still the loan was not usurious; because the debtor had it within his power to avoid payment of more than the principal and legal interest by promptly meeting every promised payment.

Third: Though the contract be adjudged usurious, the creditor had not received or collected, and the debtor had not paid, any usurious interest nor a greater rate of interest than ten per cent per annum, and hence the creditor never became liable for a penalty of double the amount of such interest.

We will briefly state the reasons which compel us to refuse to sustain each of these grounds in the motion for rehearing, not deeming it necessary to greatly extend the opinion heretofore filed.

The court recognizes its duty in determining the validity of the contract here involved to apply the universally accepted rule declared in Investment Co. v. Grymes, 94 Texas, 613, 614, 63 S. W., 860, 861, 64 S. W., 778, in the following words:

"To determine the question of usury in a contract it must be tried by the statutory limitation of 10 per cent per annum for the use, forbearance or detention of the money for one year; if the interest contracted for exceeds that rate, it constitutes usury, no matter in what form the contract may be expressed. The court must give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal, but it has no right to depart from the terms in which it is expressed to make legal what the parties have made unlawful. * * *

"If the transaction was such as to render the intention of the parties doubtful, the court would adopt that construction which would attribute to them a legal intention, but we can not adopt any method for the solu-

tion of this question by which we must arrive at a different result from that shown by the contract, because it is impossible to conceive of the parties' having an intention to use certain forms of contract that would produce a result different from that which they embodied in the contract actually made."

;If the contract between these parties contained no language other than that if default was made in the payment of any installment of interest the principal of the note "with interest" should be collectible at the creditor's option, then such language would be fairly susceptible of the meaning that unearned interest was to be abated. So, in Dugan v. Lewis, 79 Texas, 249-254, 14 S. W., 1024, 12 L. A. R., 93, the language of the deed of trust, coupled with the explicit words of the note, made the contract susceptible of the interpretation that unearned interest was not collectible. But here the parties have used clear and positive language to negative the abatement of any portion of the unearned interest secured by the scond lien deed of trust. The second lien deed of trust secured five interest notes of $252 each, dated august 1, 1921, when the loan was made, maturing respectively August 1, 1922, August 1, 1923, August 1, 1924, August 1, 1925, and August 1, 1926. The language of this deed of trust, which we are asked to adjudge fairly susceptible of authorizing abatement of some of the second lien notes representing unearned interest, stipulates:

"If the notes secured hereby and each of them are not paid promptly when due * * * then all of said notes hereby secured shall become due and payable at the election of the holder; and the trustee, his successor or substitute, may sell said premises after notice as prescribed in first deed of trust, execute and deliver a good and sufficient deed therefor, and receive the proceeds of sale, which shall be applied as follows: First: To the expense of making such sale, including compensation to the trustee; Second: To the payment of the amount secured thereby; Third: To the payment of any delinquent interest, taxes, attorney's fees or other sum due under the terms of said first deed of trust, and the balance, if any, shall be paid to the grantors, his or their heirs or assigns."

The English language could declare no plainer that what the holder of the notes was to receive, at his option, if any installment interest note secured by the second lien deed of trust was not paid at maturity, was at least:

First: *All* of the unpaid notes secured by the second lien deed of trust and not merely a portion thereof less than all; and, Second: The unpaid portion of the coupons for at least the earned interest at 6% per annum secured by the first lien deed of trust; and, Third: The unpaid portion of the principal of $4,200.

Shropshire and wife paid the first and second lien notes maturing August 1, 1922, and August 1, 1923. Giving effect to the plain and

unambiguous language of the second lien deed of trust, on their default to pay the second lien interest installment due August 1, 1924, they were no longer entitled to withhold the loan, if the Credit Company demanded payment, but were immediately obligated to pay for the loan of $4,200 from August 1, 1921, to August 1, 1924, not only the principal sum of $4,200, with interest at 12% per annum from August 1, 1921, to August 1, 1923, which the contract undertook to authorize the company to retain, but also an additional amount of $1,008, being the aggregate of the three unpaid second lien notes for $252 each, plus at least the third first lien note of $252, such amount equalling 24 per cent interest for the third year of the loan. Simply stated, the contract we have declared usurious is one which certainly undertakes to grant the creditor an option, contingent alone on the debtor's default, to collect interest at the rate of 12 per cent per annum for the first and second years of a loan, and at the rate of 24 per cent per annum for the third year, which was the final year, at the creditor's election.

The rule that the court will adopt the interpretation given by the parties to terms of a contract of doubtful meaning cannot be applied in this case. For, as stated by Mr. Williston: "If the meaning of the contract is plain, the acts of the parties cannot prove a construction contrary to the plain meaning." 2 Williston on Contracts, sec. 623, p. 1207.

Our conclusion is that the words of this contract are so clear that the parties must have understood them as meaning that upon the debtor's default to pay a second lien installment note, the debtor was to become liable, at the creditor's option, for the payment of the principal of this loan, with compensation for detention thereof at a rate far in excess of ten per cent per annum. Abatement of unearned interest embodied in the second lien notes is not only not sanctioned, but is forbidden by the terms of the contract.

Speaking of Dugan v. Lewis, supra, the argument of Judge Nelson Phillips in behalf of the motion for rehearing stated: "In a word, the view of the court necessarily was that such a stipulation did not plainly evidence a purpose to exact, on the acceleration of the maturity, the whole amount of the interest regardless of whether it had been earned or not; and hence, a construction of that harshness—not being the inevitable construction af the actual stipulation—was not to be indulged. Had the stipulation made it clear that upon an acceleration of the maturity, the whole interest was to be collectible without reference to whether it had been earned, a different question would have been before the court." In our opinion this latter question is the one we have determined in this case. For, we have a clear stipulation that upon acceleration of the maturity, *all* of the interest secured by the second lien deed of trust, despite the fact that much of it is unearned, shall be due and payable. The stipulation plainly attempts to give the creditor a present right of action

for *all* this interest, enforceable by trustee's sale or under judicial foreclosure. Swanson v. Spencer, 177 Mo. App., 124, 163 S. W., 285, 286.

The Constitution expressly authorized the enactment of our statute defining interest and providing penalties for usury. Section 11, article 16, Constitution of 1876 and amendment adopted August 11, 1891. The precise question on which the Court of Civil Appeals and the Supreme Court differed in Parks v. Lubbock was whether a stipulation in a written contract requiring payment of an amount in excess of what would be provided by the highest conventional rate of interest, for the continued detention of money *after* maturity was, under our stattues, a stipulation for a penalty or was a provision for unlawful interest. The Court of Civil Appeals adopted the view, still strenuously urged on this rehearing, that the stipulation must be regarded as merely imposing a penalty to enforce prompt payment: because the debtor's obligation to pay any unlawful amount was contingent on his own default. 50 S. W., 466, 467. The Supreme Court adopted and has since consistently adhered to the contrary view, regarding the language of the statute as necessitating the conclusion that whatever the debtor was obligated to pay, after maturity of his obligation, in addition to principal, for nothing save borrowed money, and no other contingency than his default in discharging his debt when due, was to be paid for the detention of the debt and usury if in excess of the amount to be yielded by the highest conventional rate. Parks v. Lubbock, 92 Texas, 637, 638, 51 S. W., 322, 323; Investment Company v. Grymes, 94 Texas, 613-615, 63 S. W., 860, 64 S. W., 778; Shear Co. v. Hall (Texas Com. App.), 235 S. W., 195-198. It follows that under our interpretation of the Shropshire contract as imposing on the debtors a liability, enforceable at the creditor's option, for compensation in excess of the permissible maximum for the detention of the borrowed money, such contract was usurious.

The contract derives no validity from the fact that payment of the promised compensation, which exceeded the highest allowable conventional interest, was contingent on the creditor's election to demand such excessive compensation. The fact that the contract stipulates for more interest than the law allows on a contingency involving no risk of principal and lawful interest condemns the contract. Once you treat the acceleration clause as obligating the debtors to pay more than permissible conventional interest, instead of stipulating for a penalty, the invalidity of the contract is inevitable. This results from the rule declared by the New York Court of Appeals in words as follows:

"If the contract provide for the payment of the loan with interest, at all events, it is enough to render it usurious if in addition to the legal interest, it provide for the payment of excessive interest *upon a contingency*. A stipulation even for a chance of advantage beyond legal interest is illegal." Leavitt v. DeLauny, 4 N. Y., 369.

Among English and American decisions supporting this conclusion may be cited: Barnard v. Young, 17 Vesey, 45; White v. Wright, 3 Barn. & Cress., 276; Smith v. Nicholas, 8 Leigh (Va.) 357, 361; Cleveland v. Loder & Draper, 7 Paige (N. Y.) 559; Browne v. Vredenburgh, 43 N. Y., 197.

The final contention of the motion for rehearing is that though the contract exacts usury, yet no greater interest than ten per cent per annum has been paid by the debtors or received by the creditor. The contention rests on the premise that the term of the loan was ten years. The premise falls under the operation of the stipulation in the contract that the debtor's failure to pay any of certain interest installments should entitle the creditor to collect the principal sum loaned with usury. The necessary result of the successful maintenance of this suit to adjudge the contract usurious was non-payment of any future interest. By the stipulations of the contract, the term of the loan, at the creditor's option, does not extend beyond the date of default in discharging any installment of interest. For the reduced term, which must now be looked to in determining the question of how much interest was promised or paid, the debtors promised and actually paid interest at a rate greater than ten per cent per annum. Under the stipulations of the contract, the creditor was entitled to retain money paid as interest for two years at the rate of twelve per cent per annum. Under those stipulations, the creditor was further entitled to the principal sum loaned and additional interest at a rate in excess of twelve per cent per annum. Under such circumstances, the creditor has surely collected and the debtor has actually paid greater interest than ten per cent per annum, and the creditor became liable for the statutory penalty, for which judgment was entered in this court.

The Galveston Court of Civil Appeals decided that double *any* interest collected under a contract tainted with usury was collectible under article 3106 of the Revised Statutes of 1895, and the Supreme Court denied a writ of error. American Building & Savings Association v. Daugherty, 27 Texas Civ. App., 430, 66 S. W., 131, 135. The conclusion in this case that a greater rate of interest than ten per cent per annum was actually paid by the debtors and received by the creditors renders it unnecessary for us to determine whether changes subsequently made in the wording of the statute require a different decision from that of the court at Galveston.

In obedience to the behest of the Constitution to provide appropriate penalties to prevent contracts for a greater rate of interest than ten per cent per annum, the Legislature has declared that all written contracts whatsoever which may in any way, directly or indirectly, provide for a greater rate of interest than ten per cent per annum shall be usurious and void, and that the person paying such greater rate of interest may "receive double the amount of such interest from the person, firm or corporation

receiving the same." Article 16, section 11, Constitution; articles 5069 to 5073, R. S. Under these constitutional and statutory provisions, the illegality is the same whether the contract for usury takes the form of a stipulation for lawful interest, becoming a stipulation for usurious interest through reduction of the original term of the loan and increase in that which may be exacted of the debtor, at the creditor's option, or no other contingency that the debtor's default; or whether the contract is in the form of a stipulation for interest in excess of ten per cent per annum for a specific term. Both contracts provide for usury.

Since the judgment entered herein enforces the Constitution and statutes, the motion for rehearing must be and is overruled.

Associate Justice Pearson not sitting.