**PEORIA LIFE INS. CO. v. HARTON.**

No. 11621.

Court of Civil Appeals of Texas. Dallas.

June 1, 1935.

Rehearing Denied June 29, 1935.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Bishop & Holland, of Athens, for appellee.

BOND, Justice.

The Peoria Life Insurance Company filed this suit in the nature of a trespass to try title, sued out a writ of sequestration, and levied on the real estate involved in the suit. The appellee filed a replevy bond, and in cross-action challenged, as usury,

the contract which formed the basis of a foreclosure proceedings, through which appellant claims title; sought to have all payments of interest made thereunder applied to the principal note, tendering the balance into court.

The contract was evidenced by a promissory note executed on October 2, 1922, by the appellees, payable to the order of the Oklahoma Farm Mortgage Company, subsequently transferred to the appellant, for the principal sum of $1,400, due on October 1, 1932, bearing interest at the rate of 7 per cent. per annum from date until maturity, payable annually, and evidenced by ten coupon notes attached thereto.

The principal note provides that: "If any part of the principal or interest of this note is not paid at maturity, it shall bear interest thereafter at the rate of 10% per annum, payable annually. Principal and interest are secured by and subject to the terms of a mortgage, which is the first lien on real estate in Henderson County, Texas." Another provision reads: "Two Hundred and No/100 ($200) Dollars, if possible, or all of this note may be paid October 1st, 1924, or any date thereafter, by giving payee ninety (90) days written notice."

As a part of the loan transaction, and for the purpose of securing payment of the above-described principal and interest coupons, the appellees executed a deed of trust to Andrew Kingkade, trustee, for the use and benefit of the payee, its successors and assigns. The accelerating maturity clause of the deed of trust provides: "If default shall be made in payment of the principal of said note (s) or any installment of interest thereon, when the same shall become due, and any-one of the said sums shall remain unpaid, or in case of the breach of any of the agreements and covenants herein mentioned, or in any case herein provided, then, on the application of the Oklahoma Farm Mortgage Company (third party), its successors and assigns, the said trustee (second party), or his successor or successors appointed hereunder, is hereby authorized and empowered to sell the property hereby conveyed * * * and shall receive the proceeds of said sale, and out of the same shall pay: First, all charges, cost and expenses of executing this trust, including attorney's and trustee's fees; second, the debt and all sums of money due, or to become due hereunder with interest as agreed in such priority as said trustee may

determine; and, third, shall render the surplus, if any, unto first party, etc." Another provision of the deed of trust reads: "If default be made in the payment of any principal or interest on said note (s) * * * then, at the option of said Oklahoma Farm Mortgage Company (third party), its successors and assigns, the whole of the debt herein secured shall become due and payable. * * *"

Simultaneously with the making of the said notes and deed of trust, the appellees executed another series of ten interest notes in the sum of $42 each, being in amounts at the rate of 3 per cent. per annum on the principal, due in numerical sequence on the 1st day of October of each year thereafter, the last one maturing October 1, 1932. These notes provide: "That if this note should become or be declared in default, it shall be paid at American Exchange National Bank, Dallas, Texas, with interest at 10% per annum from maturity."

As an additional part of the loan transaction, the appellees executed and delivered to Andrew Kingkade, trustee, a second deed of trust on the land, for the use and benefit of the Oklahoma Farm Mortgage Company, to secure it in the payment of the ten $42 interest notes. This deed of trust provides: "The above described indebtedness (Ten $42. notes) is a part of the consideration for a loan made by third party (Oklahoma Farm Mortgage Company) to first parties (L. A. Harton and Nellie Harton), as evidenced by a first deed of trust, of even date herewith, for the principal amount below referred to, and it is expressly understood and agreed that any option placed on the notes or bonds secured by said first deed of trust is in consideration of the payment on the indebtedness recited, to be secured herein of an amount reducing the indebtedness herein in proportion to the reduction of the principal of the first lien loan, and failure to do so annuls the option privilege granted on said first deed of trust loan."

Another provision of this deed of trust reads: "Now, if the said indebtedness and all sums evidenced by said notes or secured by this instrument, shall be paid when due, and all the covenants, stipulations and agreements herein and of said first deed of trust shall be performed, then these presents shall be null and void, and shall be released at grantor's expense; but if default shall be made in the payment of any part of said indebtedness or of any of said

notes, or in the performance of any covenant, condition, stipulation or agreement herein or of said first deed of trust, then, in any such event, the trustee shall foreclose by action, or at the request of the holder of any past due and unpaid note, charge, or item secured thereby, sell the property hereby conveyed, subject to the lien of said first deed of trust and subject also to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured. * * *"

The case was tried to the court under the following agreement: "It is stipulated and agreed by and between the parties hereto that L. A. Harton and wife executed the deeds of trust and notes set out and described in defendant's cross action. That the notes described in the second deed of trust were executed as a part of the interest upon the note described in the first deed of trust. That L. A. Harton had paid to the plaintiff of said indebtedness, the sum of $1,120. as interest, and that said payments were made as alleged in defendant's cross action. It is agreed that the sale made by John W. Easterwood, as substitute trustee, was made on account of default in interest only. The same being defaulted in the payment of the 9th installment of interest, of the first deed of trust note. It is further agreed that legal title to the property is vested in defendant L. A. Harton and wife, subject to the purported liens of the plaintiff, and subject to the validity of the foreclosure proceedings, and subject to the foreclosure sale being held valid. It being agreed that if the court sets aside the trustee sale the title is in L. A. Harton, subject to the liens the court may find."

The court rendered judgment, decreeing title to the land in appellees, canceling the trustee's deed made under the provisions of the first deed of trust, in default of the payment of the last attached interest coupon, awarding to appellees the sum of $30 for damages incident to the sequestration writ and to appellant the sum of $280, balance on the $1,400 note, after allowing the $1,120 as a payment; and for foreclosure of its deed of trust lien on the land.

There is no contention that in the transaction the interest provided for and actually paid was in an amount in excess of 10 per cent. per annum, that the 10 coupon notes and the 10 interest notes were interest obligations on the principal note of $1,400, and that two of each of the series were unpaid at the time of the sale by the

trustee. The first deed of trust does not in any way refer to the second deed of trust or the interest notes secured thereby. There is no acceleration of maturity in either of the deeds of trust or in the interest notes as to payment of the unmatured interest evidenced by the coupon and second lien interest notes.

The question here is: Do the contingencies provided in the contract authorizing the lender to exercise options to accelerate the maturity of the debt, covenant a possibility of the lender exacting interest which would constitute usury. In answering this question, due observance must be given to the entire contract, whether its terms are contained in one instrument or in many; the controlling fact to be determined is the purpose and intention of the parties, embodied in the contract, interpreted as a whole. When the presence of usury is sought to be established, there must exist an intention to exact more for the use, forbearance, or detention of money than the maximum allowed by law.

The provisions of the second deed of trust, taken alone, indicate an intention on the part of the lender in the exercise of the options in case of default in the compliance with the terms or conditions of the first deed of trust to collect all of the second lien interest notes. If the lender had that power and such was its intention and, in the exercise of any of the options of accelerating the maturity of the principal note, it could exact interest thereunder at the rate of 10 per cent. per annum, in addition to the 3 per cent. evidenced by these notes, the contract would be brought under the condemnation made of such contracts in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269, and in Deming Inv. Co. v. Giddens, 120 Tex. 9, 30 S.W.(2d) 287. We do not think that such was the intention and purpose of the parties.

The provision in the principal note that it shall bear 10 per cent. interest "if any part of the principal or interest of this note is not paid at the maturity" has no reference whatever to any default clause in the deed of trust accelerating the maturity of the note. It clearly has reference only to the date recited in the note as the maturity of the debt, and at which time, if the principal and interest are not paid, the debt then due shall bear 10 per cent. interest. The provision to allow the exaction

of 10 per cent. evidently was the intention of the parties to apply only after the expiration of October 1, 1932, the maturity date in the note.

■ The accelerating date of maturity in the deed of trust, in case of default, providing that "the whole of the debt herein secured shall become due and payable and may be collected by suit or by proceedings hereunder," has application, we think, only to the rights of the trustee and/or the beneficiary to enforce the powers of sale provided thereby and to set up a new standard for the payment of interest. The debt referred to in the deed of trust has reference only to the principal of the loan with any matured interest, and not to any unearned interest. Burnette v. Realty Trust Co. (Tex. Civ. App.) 74 S.W.(2d) 536.

If the acceleration of maturity clause in the deed of trust, in connection with the provisions of the note, that it shall bear interest at the rate of 10 per cent. per annum after maturity, is susceptible to the construction that 10 per cent. per annum shall be exacted after default, and, in addition thereto, the 3 per cent. of the unmatured interest evidenced by the notes and second deed of trust be also exacted of the borrower, then, clearly, the loan contract would be usury. But we do not so interpret the purpose and intention of the parties. The accelerating maturity provisions of the contract evidently express the grant to the lender of the right to enforce the powers of its security to the payment of the debt then due, and not to exact an additional 10 per cent. interest. The change in the rate of interest from that contracted to that provided by accelerating the maturity of the debt was intended by the parties to set up a rate of interest, supplanting and making nugatory all unmatured interest obligations; also it was their intention, should the property be sold in default of the payment of the principal and/or matured interest such sale would make uncollectible all future interest thereon, even though it be evidenced by separate notes, there being no question of innocent purchaser by third party involved.

■ In the case of Walker v. Temple Trust Co., 80 S.W.(2d) 935, 937, the Commission of Appeals, adopted by the Supreme Court, in a loan transaction, in effect not dissimilar to the notes and deeds of trust involved in this case, held: "* * *

Unearned interest is no part of an indebtedness at the time of prematurity under an option by the lender, it is therefore uncollectible because of lack of consideration, and the presumption is that it was not to be collectible in the event of acceleration of undue interest installments; therefore, the rule should be, as clearly recognized in motion for rehearing in the Shropshire Case (Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A. L. R. 1269), that unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events, the court will give it the construction that the parties intended that the unearned interest should not be collected."

■ Applying the rule announced in Walker v. Temple Trust Co., supra; Hughes v. Bryson (Tex. Civ. App.) 29 S. W.(2d) 898; Burnette v. Realty Trust Co., supra, and Northwestern Nat. Life Ins. Co. v. Whittington et al. (Tex. Civ. App.) 81 S.W.(2d) 173, we have reached the conclusion, by the stipulations of the entire contract, fairly considered, the contract is free from usury; therefore the judgment of the lower court is reversed and here rendered in favor of appellant for the title and possession of the land in suit.

Reversed and rendered.