## LIFE INS. CO. OF VIRGINIA v. WALL et ux.

### No. 4582.

Court of Civil Appeals of Texas. Amarillo.

April 20, 1936.

Rehearing Denied May 25, 1936.

Bledsoe, Crenshaw & Dupree, of Lubbock, and Davidson & McMahon, of Abilene, for appellant.

Vickers & Campbell and Wm. H. Evans, all of Lubbock, for appellees.

MARTIN, Justice.

This is a usury suit. On December 3, 1925, appellees, Elmo Wall and Lillie Wall, husband and wife, executed and delivered to the Southern States Mortgage Company a deed of trust on Lubbock county real estate to secure a loan of $22,500, evidenced

by ten notes, the first nine for $2,000 each, and the last for $4,500. These were all payable to said Mortgage Company, all bore interest at 6 per cent. from date and 10 per cent. from maturity, all dated December 3, 1925, and matured, the first, January 1, 1927, and one on January 1st of each consecutive year thereafter. The trust deed provides in part: "It is further specially agreed that if default be made in the payment of said bonds or any interest thereon, or in the performance of any of the covenants or agreements herein contained, or if any of the taxes or assessments referred to in the last preceding paragraph hereof shall be imposed, then, at the option of the legal holder or holders of said bonds the whole indebtedness secured hereby shall at once become due, without notice, and may be collected by suit or proceeding hereunder."

The said notes each stipulate that: "It is agreed that in case any one of the notes of which this is one of a series or any installment of interest thereon, shall remain unpaid for ten days after the same becomes due, or in case of failure to comply with any of the agreements and conditions set forth in the deed of trust given to secure this note, then, at the election of the legal holder hereof, at any time thereafterwards made, the principal sum expressed in this note, with all accrued interest may by said holder be declared immediately due, without notice, and may be collected forthwith by sale under said deed of trust, or otherwise, as said holder may elect."

Contemporaneously therewith, and as a part of the same transaction, appellees executed to said company a second trust deed to secure five notes of $260 each, due respectively July 1, 1926, 1927, 1928, 1929, and 1930, and bearing interest from maturity at 10 per cent. per annum. This instrument provides:

"This deed of trust is made subject to a first deed of trust executed by the grantors herein, to Henry James, trustee, for the purpose of securing ten notes, hereinafter called 'Bonds', aggregating twenty-two thousand five hundred and no/100 dollars, payable to said Southern Mortgage Company, said notes hereinabove described and secured hereby being given for a part of the interest on said bonds as evidenced and described by said first deed of trust of even date herewith. * * *

"But if default shall be made in the payment of any part of said indebtedness or any of said notes, or in the performance of any covenant, condition, stipulation or agreement herein, or of said first deed of trust, then in any such event said trustee shall foreclose by action, or at the request of the holder of any past due and unpaid note, charge, or item secured hereby, sell the property hereby conveyed subject to the lien of said first deed of trust, and subject also to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured, to the highest bidder, for cash," etc.

There are also option clauses referred to hereafter. Each of said last notes carry this stipulation: "This note shall be payable in the full amount herein specified and shall not be depreciated on account of any optional payment which might be made on the first mortgage notes or bonds."

No acceleration clause appears either in the second series of notes or in the trust deed given to secure them.

In December, 1926, the said Mortgage Company sold and transferred to appellant, the Life Insurance Company of Virginia, all of the first series of notes, except the second one. It thereafter retained and collected the said second note for $2,000, and all the second series of notes aggregating $1,300, from appellees.

On May 30, 1934, appellees filed suit against said Life Insurance Company and said Mortgage Company, jointly, alleging the existence of the transaction detailed above, setting up certain payments, and claiming the existence of usury. They asked in part to have certain payments applied on the principal indebtedness, and in part for a usurious penalty, etc. Their prayer in part was:

"* * * They have and recover of and from the defendants and each of them the sum of $21,205.09, to be applied as a credit and extinguishment of the principal indebtedness of $22,500.00 as aforesaid, this sum to be recovered, including the recovery of double the sum of $1479.90 as interest paid on said indebtedness to the defendants since June, 1932, leaving a balance due and owing $1294.91, and that it be so adjudged that plaintiffs are only due said sum to the defendants or either of them on account of the contract being usurious as aforesaid. * * *

"* * * That upon tender and payment of the amount so adjudged as due and owing the defendants or either of them by the plaintiffs that the aforesaid liens be

in all things cancelled as liens against the property, as well as the notes outstanding be in all things cancelled. * * *"

Judgment was entered by the trial court for appellees as prayed for. The Life Insurance Company only has appealed.

The second series are interest notes. The contract provides for less than 10 per cent. interest annually if it runs to maturity. Appellee claims that the holder of the first series of notes can accelerate their maturity, make them draw 10 per cent. interest as therein provided, leaving the second series outstanding and payable, thus enabling the holder or holders of them to collect 10 per cent. interest per annum, plus $260. If this state of facts were the sole basis for a claim of usury, it would, in our opinion, be without merit. The acceleration clause of the first trust deed provides for the collection of the "whole indebtedness"; that of the first notes, for "all accrued interest."

Construing the several instruments as one contract, and imputing to the parties a lawful intent, the conclusion is a logical and fair one that the parties intended to collect 10 per cent. interest per annum. That this might result in an entire or partial abatement of the amount of the second series of notes is not of controlling importance. The reasoning of authorities from Shive v. Braniff Investment Co. (Tex.Civ.App.) 68 S.W.(2d) 564, to Travelers Ins. Co. et al. v. Anderson et ux. (Tex.Civ.App.) 89 S.W.(2d) 428 (writ ref.), require, we think, this construction. The last case contains a full collation of Supreme Court authorities, and as regards this particular contention is believed to be squarely in point. Otherwise stated, under the above facts alone, we would presume the parties only intended to charge interest at 10 per cent. per annum and collect only accrued interest. Unfortunately for appellant, however, the contract in question contains much more than the above. We cannot indulge presumptions in the face of clear and unequivocal language which precisely contradict such. Here the parties pointedly contract in the second series of notes: *"This note shall be payable in the full amount herein specified, and shall not be depreciated on account of any optional payment which might be made on the first mortgage notes or bonds."* (Italics ours.)

There are two options of payment mentioned in the aforesaid contracts; the first one set out hereafter was for the benefit of the borrower, and the second for the benefit of the owner of the second series of notes. They are:

The first: "The payor hereof has the option of paying $100.00 or any multiple thereof, not exceeding one-fifth of the principal amount of this bond per year on any interest payment date for the first five years, and payment of the bond in full on its fifth anniversary due date, or any subsequent anniversary date thereafter; provided that such payments will at no time leave the amount remaining unpaid less than $500.00. It being understood that any payments under the above options will not be acceptable unless 60 days' written notice is served of intention to so pay, and the serving of such notice, and failure to pay, will mature this loan at the option of its holder."

The second: "The beneficiary or holder of the indebtedness hereby secured shall have the option of taking over or paying off any part of the indebtedness secured by said first deed of trust, and shall have the right to pay off any unpaid taxes or other assessments against the above described property, and may pay off any unpaid insurance premium required to be paid by grantors under the terms of said first deed of trust, and any such amount so taken over or paid shall be further secured by the tenor of this instrument. * * *

"* * * And any such amounts so paid by the beneficiary or holder of the indebtedness hereby secured for taxes, assessments, insurance or other past due indebtedness shall be immediately due and payable to the holder thereof, and the rights and remedies for collection of same may be enforced hereunder."

In the Anderson Case, supra, the principal note stipulated for optional payments as here, but pointedly provided: "And such payments, if any, shall reduce proportionately the amounts of the unmatured interest notes recited in and secured by both trust deeds." 89 S.W.(2d) 428, at page 429.

This clause distinguishes such case from the instant one. Thus the present contract is so conditioned that either the holder of the first or second series of notes may mature the first series and collect 10 per cent. thereon, plus the full amount of the second series therein "specified." To illustrate: A holds all the first series of notes and B all the second. C is the bor-

rower. C on July 1, 1927, exercises his option to pay one-fifth of the then principal, or $4,100 with 6 per cent. interest, leaving $16,300 still due. He violates some provision of the trust deed the following fall, and A matures the entire amount. His contract calls for 10 per cent. interest per annum in such contingency. B also claims the amount of his note then due as therein "specified," and points to the clear language of his contract providing for no abatement. Or suppose that B exercises his option to pay off A's indebtedness when it is matured, and does so. He now holds the first series drawing 10 per cent. and his own, providing for no abatement, and further providing in substance that in any sale under his trust deed the purchaser takes the property subject to any of his unmatured notes. B elects to sell the property for one note then due; there being three of $260 each not yet due. Under the language of his contract there is owing this one and the first series, with 10 per cent. interest thereon, and the three $260 notes are to remain valid obligations under the quoted stipulations of his contract. Faced squarely with this situation, how can we presume the parties intended to abate the second series?

■ We quote from the opinion of Judge Greenwood in Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 285, 39 S.W.(2d) 11, 84 A.L.R. 1269: "A contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts."

Also from his opinion in the same case, 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 13, 84 A.L.R. 1269:

"Our conclusion is that the words of this contract are so clear that the parties must have understood them as meaning that, upon the debtor's default to pay a second lien installment note, the debtor was to become liable, at the creditor's option, for the payment of the principal of this loan, with compensation for detention thereof at a rate far in excess of 10 per cent. per annum. *Abatement of unearned interest* embodied in the second lien notes is not only not sanctioned, *but is forbidden by the terms of the contract.* [Italics ours.] * * *

"If the contract provide for the payment of the loan with interest, at all events, it is enough to render it usurious, if in addition to the legal interest, it provide for the payment of excessive interest, upon a contingency. A stipulation even for a chance of advantage beyond legal interest, is illegal."

Judge Leslie in the recent case of Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929, writing for the court an exceptionally clear opinion upon facts not essentially different from these, reaches the same conclusion we do here.

■ Our conclusion is that the trial court did not err in holding the contract in question tainted with usury under the above facts.

Within two years prior to the institution of appellees' suit, they paid the sum of $1,497.88 as interest on said loan. The court awarded to appellees a penalty judgment in double this amount. All payments of interest made to the Mortgage Company on notes held and owned by it were credited as payments on the principal of the notes held by appellant, as well also as the amount of the penalty judgment. This left a balance of $1,294.91 owing appellant. The trial court erred in both these matters.

■■ Appellee cites no evidence, and we have found none, showing any annual payment of interest during either of the two years immediately preceding the filing of appellees' suit, in excess of 10 per cent. This is the requirement of our penalty statute (Vernon's Ann.Civ.St. art. 5073), though the contract itself may be usurious. Mention is made by appellees of a discount given appellees in 1928 of three of the $260 notes, then not all due. Under the arrangement, appellees paid to the Mortgage Company $741 in extinguishment of the second lien and the full payment of all remaining notes of the second series. Adding this $741 to $1,110 paid appellant makes a total of $1,851, or $1 more than 10 per cent. per annum on the then principal. This, it is argued, shows the collection of more than 10 per cent. We fail to perceive how this 1928 transaction could affect this case. It was plainly not usury, since it was the result of a private agreement, and not demanded or required by the contract between the parties. Moreover, the payment of $741 was neither demanded

nor received by the appellant. How could it be legally penalized for an illegal act, with which it was in no way connected?

The indebtedness owned by the Mortgage Company was paid to it and charged to the appellant as stated above. Under the recent cases of Ward v. Pace (Tex.Civ.App.) 73 S.W.(2d) 959 (writ ref.), and Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929, this action of the trial court was erroneous.

The trial court was authorized to credit all payments made to appellant upon the principal of the original debt owned by it. Any penalty credits thereon, or of payments to another as the Mortgage Company, were unauthorized.

The record is a mass of figures. The payments are to "them" or "defendants." The case was apparently not developed in such way as to enable us to separate payments made to the Mortgage Company from those made to appellant. It may be that a proper showing can be made on motion for rehearing.

We therefore cannot render, but are forced to reverse and remand.

Reversed and remanded.